# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 1, 2003 Session

## JUDITH LYNN SILVEY v. DARRELL C. SILVEY

**Appeal from the Chancery Court for Hamilton County**
**No. 00-0572      Frank Brown, III, Chancellor**

**FILED MARCH 16, 2004**

**No. E2003-00586-COA-R3-CV**

In this divorce case the Appellant, Darrell C. Silvey, contends that the Trial Court erred in its allocation of property between himself and the Appellee, Judith Lynn Silvey. We modify the judgment of the Trial Court, affirm as modified and remand. Costs of this appeal are adjudged equally against Mr. and Ms. Silvey.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and CHARLES D. SUSANO, JR., JJ., joined.

Roger E. Jenne, Cleveland, Tennessee, for the Appellant, Darrell C. Silvey

John P. Konvalinka and Mathew D. Brownfield, Chattanooga, Tennessee, for the Appellee, Judith Lynn Silvey

### OPINION

This appeal arises out of a divorce suit filed by Ms. Silvey in the Chancery Court for Hamilton County in May of 2000. After the case was tried in January of 2001, the Trial Court classified the parties' property as either "marital" or "separate", assigned values to such property and sought to effect an equitable division of the marital assets. The Trial Court's decree was thereafter appealed to this Court by Ms. Silvey and the issues raised, as restated, were as follows:

1. Did the Trial Court err in its award of alimony to Ms. Silvey?

2. Did the Trial Court err in its finding that the parties' home place had a value of $500,000.00 at the time of their marriage?

3. Did the Trial Court err in its finding that the parties' home place had a value of $709,500.00 at the time of their divorce?

4. Did the Trial Court err in its valuation of Mr. Silvey's business, Silvey Metal Works?

5. Did the Trial Court err in its allocation of the parties' real property located in Bledsoe County?

6. Was the Trial Court's distribution of marital assets equitable?

As set forth in *Silvey v. Silvey*, an unpublished opinion of this Court filed in Knoxville on March 22, 2002, we affirmed the Trial Court's award of alimony and its valuation of both Silvey Metal Works and the parties' property in Bledsoe County. However, we found that the record did not contain adequate proof to support the Trial Court's finding that the value of the home place was $500,000.00 at the time of marriage and we remanded the case for presentation of evidence which would allow the Trial Court to establish that value. We also found that our decision to remand the case for establishment of the value of the parties' home place at the time of their marriage, "necessitates a remand of the entire property distribution, since a significant shift in the value of one asset could impact on the overall apportionment." We further noted that "[a]ll of the other issues raised by these parties regarding the property distribution will need to be addressed on remand, as well." Finally, we specifically directed the Trial Court as follows at page 2:

> Upon remand, the Trial Court is directed to take further proof on the value of the marital residence at the time of the marriage and determine the increase in value of that property during the marriage and then divide the parties' property in accordance with the statutory factors.

The Trial Court entered its memorandum opinion on remand on February 6, 2003. Thereafter, Mr. Silvey filed the appeal now before us.

Issues presented in the instant appeal are re-stated as follows:

1. Did the Trial Court err in awarding real property designated as the Stringer Street lot and the Carousel Road lots to Ms. Silvey?

2. Did the Trial Court err in classifying the home place as marital property?

3. Did the Trial Court err in finding that the increase in the value of the home place after marriage constitutes marital property?

4. Was the Trial Court's distribution of marital assets equitable?

Our standard of review in this non-jury case is *de novo* upon the record of the proceedings below and there is no presumption of correctness with respect to the trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996) and T.R.A.P. 13(d). A trial court's factual findings are, however, presumed to be correct and we must affirm such findings absent evidence preponderating to the contrary. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993).

The first issue we address is whether the Trial Court erred in awarding the lot on Stringer Street and the lots on Carousel Road to Ms. Silvey.

Mr. Silvey asserts that real property located on Stringer Street and Carousel Road was his separate property and notes that this fact was acknowledged by Ms. Silvey in her testimony in the original trial of this case on January 18, 2001. Accordingly, Mr. Silvey argues, the Trial Court was precluded from awarding this property to Ms. Silvey. In support of this argument Mr. Silvey cites *Cutsinger v. Cutsinger,* 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995) as follows:

> Moreover, TCA §36-4-121(a)(1) gives the trial court great latitude in equitably dividing marital property between divorcing parties. However, as a threshold matter, property must first qualify as marital property under TCA §36-4-121(b)(1)(A) or TCA §36-4-121(b)(1)(B) before it can be subject to the court's powers of equitable division under TCA §36-4-121(a)(1). If the non-owner spouse cannot prove that a piece of property is marital property, the trial court has no authority to make an equitable division of the property.

The Trial Court's original memorandum opinion and order entered on February 14, 2001, categorizes the Stringer Street lot and the Carousel lots as marital property and awards this property to Ms. Silvey. Mr. Silvey's argument that the Trial Court erroneously categorized this property as marital property was not raised when we were presented with the initial appeal of this case in June of 2001. Although, as we have noted, our opinion in that appeal "remanded the entire property *distribution*" (Emphasis added.), we did not remand for re-*classification* of property, which we deem to be an entirely different matter. The classification of property as either "marital" or "separate" is not synonymous with the distribution of such property but, rather, constitutes a matter preliminary to, and separate from, distribution. The Trial Court previously determined the issue of property classification and our remand did not invest it with authority to re-open that issue. The issue of whether the Trial Court erred in its classification of this property was not raised in the original appeal of this case and may not be raised in the present appeal if for no other reason than that it is time barred under Tenn. R. App. P. 4.

The next issue we address is whether the Trial Court erred in its classification of the parties' home place, located at 703 Battery Place in Chattanooga, as marital property. Our review of the memorandum opinion and order of the Trial Court entered on February 14, 2001, shows that the home place is classified as Mr. Silvey's separate property. It appears that during the marriage Ms. Silvey recorded a deed which placed the home place in the parties' joint names. However, in the

-3-

original trial Mr. Silvey testified that, although he signed this deed, he held it on condition that Ms. Silvey sign an agreement that, if she ever divorced him, the deed would be null and void. Mr. Silvey further testified that Ms. Silvey never signed this agreement and, therefore, he never delivered the deed to her and never recorded it. We also note that the Trial Court specifically states that it "accepts Mr. Silvey's version of the deed to the home place being placed in the parties' joint names" and, thereby, reiterates its determination that the home place should be classified as Mr. Silvey's separate property. Our present determination that the Trial Court's original finding was that the home place is Mr. Silvey's separate property is consistent with our conclusion in the original opinion we rendered in this case wherein we stated that "the Court found the Battery Place property to be the husband's separate property." As we have noted, it is our determination that the Trial Court was without authority to re-visit the issue of property classification in light of the parameters set by our directions upon remand. The general rule regarding the scope of a trial court's authority upon remand is stated as follows in 5 Am. Jur. 2d Appellate Review §791:

> In general, a trial court must strictly comply with the appellate court's mandate, and on remand normally lacks the power to deviate from the terms of the mandate from the appellate court, absent permission from the appellate court, or extraordinary circumstances. Thus, a trial court on remand generally lacks the power to enter any other judgment, or consider or determine any other issue, that is not included in the direction for entry of judgment made by an appellate court. Furthermore, relief generally cannot be given on remand beyond the scope of the mandate. Nor may the lower court review the mandate, even for apparent error.
>
> Any proceedings on remand which are contrary to the directions contained in the mandate from the appellate court may be considered null and void. (Footnotes omitted.)

The limited authority of a trial court upon remand in Tennessee was recently restated as follows in *State v. Blackhurst*, an unpublished opinion of the Court of Criminal Appeals filed in Knoxville on August 12, 2003:

> "The appellate court directs actions and dictates results through its orders, judgments, and mandates" and may limit the scope of a remand. *State v. Williams*, 52 S.W.3d 109, 123 (Tenn. Crim. App. 2001); *State v. Irick*, 906 S.W.2d 440, 443 (Tenn. 1995); *Cook v. McCullough*, 735 S.W.2d 464, 470 (Tenn. App. 1977). Such orders and mandates are controlling, and the lower court does not have "the authority to expand the directive or purpose of [the higher] court imposed upon remand." *State v. Weston*, 60 S.W.3d 57, 59 (Tenn. 2001); *Cook* 735 S.W.2d at 470. Otherwise, "'[t]here would be no finality or stability in the law and the court system would be chaotic in its operation and unstable and inconsistent in its decision.'" *Irick*, 906 S.W.2d at 443, (quoting *Barger v. Brock*, 535 S.W.2d 337, 341 (Tenn. 1976).

Accordingly, the Trial Court's order of February 6, 2003, is vacated to the extent that it decrees that the home place is marital property.

The next issue we address is whether the Trial Court erred in finding that the increase in the value of the home place during marriage was marital property.

In its order and memorandum opinion entered after trial upon remand the Trial Court states that the appreciation in the value of the home place was determined to be marital property in the original trial and that our prior opinion in this case demonstrates our agreement with that determination. Therefore, the Trial Court concludes that the law of the case and *res judicata* apply and require that the appreciated value of the property since marriage be deemed marital property.

Mr. Silvey cites the following language from *Cutsinger v. Cutsinger, ibid.* at page 241:

> In order to prove such an increase in the value of separate property, a nonowner spouse must present evidence that proves the value of the separate asset prior to the marriage. *See Bryson v. Bryson* App. No. 88-94-11, 1988 WL 87685 at **3 (Tenn. App. Aug. 26, 1988). If there is no proof of the value of a separate asset before the parties' marriage, the trial court has no legitimate basis to determine that an asset has appreciated. Thus, a trial court properly cannot make an equitable distribution of the alleged appreciated value of that particular asset.

Mr. Silvey asserts that in the instant case "[t]here was no evidence presented at the original trial to establish the value of Battery Place at the time of marriage, therefore there was no evidence to support any appreciated value of this separate property during the marriage." Apparently, Mr. Silvey argues that our finding that the value of the home place at the time of marriage was not substantiated impliedly vacates the Trial Court's finding in the original trial that the appreciated value of the home place constitutes marital property. Mr. Silvey contends that there was no evidence presented to establish the value of the home place until the trial on remand and that "[u]ntil this evidence was produced, there was no competent evidence for any finding of any appreciated value" of this property.

Mr. Silvey also cites *Harrison v. Harrison*, 912 S.W.2d 124 (Tenn. 1995) and *Langschmidt v. Langschmidt,* 81 S.W.3d 741 (Tenn. 2002) for the proposition that an increase in the value of separate property may not be classified as marital property unless evidence is presented showing that the non-owner spouse has substantially contributed to such property's preservation and appreciation. Mr. Silvey contends that the only evidence presented with regard to the increase in the market value of the home place was the testimony of Henry Glasscock, an appraiser employed by the Hamilton County Assessor of Property's Office, who testified upon remand that the increase in the property's market value was market driven. Mr. Silvey argues that the Trial Court's finding that some increase in the property's value was attributable to repairs made by both parties is mere speculation. Mr. Silvey further notes that under *Langschmidt* the fact that Ms. Silvey contributed to the marriage as

a homemaker is insufficient to warrant a finding that the property's increased value is marital property and, as stated by the Court in that case, "some link between the marital efforts of a spouse and the appreciation of the separate [p]roperty must be established before the separate property's appreciation is considered marital property."

Even if we accept Mr. Silvey's argument that our initial opinion in this case impliedly vacated any finding by the Trial Court in the original trial that the increase in value of the home place constitutes marital property, we nevertheless find sufficient evidence in the record to support such a finding upon remand. The evidence before the Trial Court upon remand included the evidence presented to the Court in the original trial of this case on January 19, 2001, and such evidence supports a finding that the increase in the value of the home place is properly classified as marital property.

In the case of *Wright -Miller v. Miller* , 984 S.W.2d 936 (Tenn. Ct. App. 1998) we noted as follows at pages 943-948:

> Whether a spouse has made a substantial contribution to the preservation and appreciation of the other spouse's separate property is a question of fact. Substantial contributions are not limited to direct contributions but also include indirect contributions such as "homemaker, wage earner, parent or family financial manager." T.C.A. § 36-4-121(b)(1)(c).

We find that the cases relied upon by Mr. Silvey, *Harrison* and *Langschmit,* are distinguishable from the matter now before us in that neither of those cases involved classification of the marital residence.

Under the facts in *Harrison* the property subject to classification was non-residential acreage and both the husband and wife acknowledged that the sole cause of the property's appreciation in value was the construction of an interstate highway in the area.

*Langschmidt* involved the review of a trial court decision classifying the appreciation in value of IRAs and non-IRA accounts belonging to the husband as marital property. Although the trial court had found that the increase in the value of the non-IRA accounts was entirely market driven, it also found that the wife made contributions to the marriage as homemaker and reasoned that the non-monetary contribution of the wife equaled the contribution of the husband to these accounts. Our Supreme Court disagreed and held, as noted by Mr. Silvey, that some link must be established between the marital efforts of a spouse and the appreciation in value of separate property before such property can be properly classified as marital property. However, based upon the following language of the *Langschmidt* Court as set forth at page 746 of the opinion, we are compelled to disagree with Mr. Silvey's contention that the evidence in the instant matter is inadequate to support a classification of the parties' home place as marital property:

-6-

Further, although it is certainly clear that Tennessee courts recognize a homemaker's contribution when making a determination of marital property, *see* Tenn. Ct. App. § 36-4-121(b)(1) (C); *Gragg v. Gragg*, 12 S.W.3d 412, 415 (Tenn. 2000), in the spirit of *Harrison* we require that some link between the marital efforts of a spouse and the appreciation of the separate property must be established before the separate property's appreciation is considered marital property. *For example, appreciation in value of the marital residence (titled separately in the name of one spouse prior to and during the marriage) is marital property once it is shown that the other spouse substantially contributed to the home's preservation and appreciation as a result of efforts made as a homemaker* or payment of the mortgage from a joint checking account, or other such contributions. Such a result, however, would not be the case if a spouse's separately-owned rental property in another state appreciated in value during the marriage absent a showing that the other spouse substantially contributed to the investment property's preservation and appreciation in value during the marriage. (Emphasis added.)

We construe this language to mean that there must be some meaningful relationship between the actions of the non-owner spouse and the property in question in order for the increase in the value of such property to be categorized as marital property. And while a wife's efforts as homemaker do not bear such a relationship to the appreciation in the value of financial accounts or rental property in another state, such efforts may be causally related to a post-marriage increase in value of a residence owned by the husband at the time of marriage. The record before us shows that at the original trial Ms. Silvey testified that she cleaned and maintained the home place. We cannot say that the evidence taken as a whole preponderates against a finding that she substantially contributed to the preservation and appreciation of the marital residence and that the increase in its value during the marriage is appropriately categorized as marital property.

The final issue we address is whether the Trial Court's distribution of the marital assets was equitable.

T.C.A. 36-4-121(a)(1) provides as follows

(a)(1) In all actions for divorce or legal separation, the court having jurisdiction thereof may, upon request of either party, and prior to any determination as to whether it is appropriate to order the support and maintenance of one (1) party by the other, equitably divide, distribute, or assign the marital property between the parties without regard to marital fault in proportions as the court deems just.

In determining what constitutes an equitable division of marital property T.C.A. 36-4-121(c) provides that the court is required to consider "all relevant factors" which include:

(1) The duration of the marriage.

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Mr. Silvey argues that the Trial Court's distribution of marital assets in this case was inequitable and asserts that he had substantial property at the time of the marriage, including various business ventures, and that the primary acquisition of the marital assets was the result of his efforts. Mr. Silvey also contends that there is a presumption in favor of an equal division of marital assets and that the value of the property owned by him separately does not overcome this presumption. Mr. Silvey indicates that, out of total marital property equity of $991,519.00, the Court awarded Ms. Silvey a total of $736,967.00 constituting approximately 74 % of all marital property equity[1] and awarded him the remaining 26% consisting of $254,552.00 in marital property equity.

Ms. Silvey contends that Mr. Silvey presents an incomplete picture of assets awarded the parties. For example, Ms. Silvey asserts that Mr. Silvey omits the Trial Court's allocation to him of assets designated by her as "Other Property". Ms. Silvey includes an itemization of these additional assets which were apparently not valued by the Trial Court but which she valued at $241,097.00 and Mr. Silvey valued at $78,650.00.

---

[1]Although the Stringer Street lot valued at $3,700.00 and the Carousel Road lots valued at $7,050.00are included in this total they are designated by Mr. Silvey as his separate property. As previously noted, it is our determination that the Trial Court's designation of these lots as marital property is no longer subject to appeal.

Our review of the list of assets designated "Other Property" shows that the following assets from that list *are* included in Mr. Silvey's itemization of the marital assets awarded to him and are shown as holding the values assigned to them by Ms. Silvey: the travel trailer, valued at $10,000.00; the 1997 Rodeo automobile, valued at $14,000.00; the 1937 Dodge Truck, valued at $5,000.00; the 1951 Chevrolet Truck, valued at $5,000.00 and the Honda 350 4-wheeler, valued at $6,000.00. Based upon these values the total value of these assets is $40,000.00. It further appears that two of the assets included in the list of "Other Property" which Ms. Silvey contends that Mr. Silvey omitted from his itemization were actually awarded to her - the Van Mor tractor valued at $16,000.00 and the Seadoo and trailer valued at $7,000.00. The only remaining items in the list of "Other Property" which were awarded to Mr. Silvey which he agreed were of value and which are not shown in his list of assets awarded to him are as follows: the Van Campen IRA, which he testified was worth $17,900.00; the AmSouth checking account, which he valued at $150.00 and the First Tennessee checking account, which he valued at $14,000.00. The total value of these three accounts is $32,050.00.

Notwithstanding our determination that the amount of "other property" omitted from Mr. Silvey's calculations is less than Ms. Silvey asserts, we otherwise find that the Trial Court's decision as to the division of property was proper in this case.

First we are compelled to note that, in addition to the marital property equity awarded to Mr. Silvey in the amount of $254,552.00, as set forth in his brief, it appears that the Trial Court also awarded Mr. Silvey the net increase in the value of his separate property designated as 901 East 11th Street, 1024 East 11th Street and Silvey Metal Works as marital property. The Court determined the net value of the appreciation of these properties to be $13,600.00. Accordingly, the actual total value of marital property equity appears to be $1,005,119.00 of which amount Mr. Silvey received $268,152.00 or approximately 27%. Furthermore, in addition to the accounts noted above valued by Mr. Silvey at $32,050.00, he retained as his separate property 901 East 11th Street, 1024 East 11th Street and Silvey Metal Works which were found by the Trial Court to have a total value, less appreciation since the parties' marriage, of $800,000.00.

In its original order decreeing the division of the parties' property the Trial Court indicates that, in reaching its decision, it considered that Mr. Silvey was in a better position to replace assets than Ms. Silvey because of his income. Among other factors which the Court indicates it considered are the parties' twenty year marriage, the value of Mr. Silvey's separate property and the estate of each party at the time of the marriage. In its order upon remand the Trial Court states that it "still believes that Ms. Silvey is entitled to more than 50% of the net value of the assets because Mr. Silvey can more easily replace assets due to the value of his income compared to Ms. Silvey's income. Further, Mr. Silvey's separate property is a significant factor in the court's determination."

Mr. Silvey retained separate assets of substantial value as we have noted above. The Trial Court's finding as to the parties' relative ability to replace assets is also confirmed by the record. We acknowledge that the Court awarded Ms. Silvey rehabilitative alimony of $3,000.00 per month from February 15, 2001, to January 14, 2002; $1,500.00 per month from January 15, 2002, to

February 14, 2004, and $1,000.00 per month from February 15, 2004, to February 14, 2006. However, absent this support of limited duration, it appears that there will exist a significant disparity between these two parties as to the income and income earning potential of each. The record shows that Ms. Silvey's earnings for 2001 were merely $8,088.46 while Mr. Silvey realized a gross income of approximately $74,000.00 for the same period which would decrease to approximately $71,000.00 in the subsequent year. The Court's finding as to the parties relative ability to replace assets is also supported by the fact, acknowledged by Mr. Silvey in his brief, that Ms. Silvey's work experience has consisted of part time and fill in employment whereas Mr. Silvey is a self employed business man with years of experience. As Mr. Silvey states in his brief, "[h]e started Silvey Metal Works in 1969 or 1970 as well as other business interests including buying and selling real estate, an employment agency, dealing with used equipment, and varied other business ventures."

A trial court is allowed wide discretion in dividing marital assets and its decision in that respect is to be given "great weight" by this Court. *Ford v. Ford*, 952 S.W.2d 824 (Tenn. Ct. App. 1997). While there is a presumption that marital property is owned equally, there is not a presumption that marital property should be divided equally. *Bookout v. Bookout*, 954 S.W.2d 730 (Tenn. Ct. App. 1997). Decisions as to the division of marital property are dependant on the facts and circumstances peculiar to the case under review. *Wade v. Wade*, 897 S.W.2d 702 (Tenn. Ct. App. 1994).

We conclude that the evidence does not preponderate against the Trial Court's division of the various marital assets except with respect to the Court's determination regarding 703 Battery Place. The Court concluded that the entire value of that property at the time of the divorce, *i.e.*, $709,500, should be treated as marital property and allocated 71.8% to Mr. Silvey and 28.2% to Ms. Silvey. In the overall scheme of things, we do not disagree with the percentages; however, we find that the Trial Court erred in failing to recognize that $95,600 of the present value is Mr. Silvey's separate property, being the value of the property at the time of the marriage. Therefore, the true marital property portion of this asset is $613,900 rather than $709,500. Dividing the true marital property portion of this asset utilizing the percentages previously found by the Trial Court to be equitable, we allocate this marital asset $440,780 to Mr. Silvey and $173,120 to Ms. Silvey, with $95,600 of the value being set aside to Mr. Silvey as his separate property. As modified by this opinion, the evidence does not preponderate against the Trial Court's overall division of the marital estate.

For the foregoing reasons the judgment of the Trial Court is affirmed as modified. This case is remanded for collection of costs. Costs of appeal are adjudged equally against Ms. Silvey and Mr. Silvey and his surety.

_____

HOUSTON M. GODDARD, PRESIDING JUDGE