IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
On Remand from the United States Supreme Court

**STATE OF TENNESSEE v. JEROME MAYO**

**Appeal from the Circuit Court for Montgomery County**
**No. 40300086    Michael Jones, Judge**

**No. M2004-03061-CCA-R3-CD - Filed September 14, 2007**

We first decided this appeal in 2005. Our decision was vacated by the United States Supreme Court and the case was remanded to us for reconsideration in light of Cunningham v. California, 549 U.S. --, 127 S. Ct. 856 (2007). We requested and received supplemental briefing from the parties addressing any Cunningham issues. When this case was previously before this Court, the Defendant challenged the sufficiency of the evidence to sustain his aggravated robbery conviction. The Defendant received an enhanced sentence of eighteen years as a Range II, multiple offender for this conviction, but the trial court subsequently reduced his sentence to fifteen years based upon Blakely v. Washington, 542 U.S. 296 (2004). Originally, the State appealed the modified sentence, arguing that the trial court erred in reducing the Defendant's sentence, and we agreed. Upon further consideration of the matter, we conclude, and the State now concedes, that sentencing was proper and affirm the judgment in its entirety. We reissue our previous opinion as follows with a new section dealing with the Cunningham issues.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J.C. MCLIN, JJ., joined.

Roger E. Nell, District Public Defender (on appeal); Russell A. Church, Assistant District Public Defender (at trial), Clarksville, Tennessee, for the appellant, Jerome Mayo.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; John W. Carney, District Attorney General; and Dan Brollier, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**Factual Background**

The Defendant's aggravated robbery conviction stems from an incident in which he and three co-defendants robbed the victim at gunpoint in Clarksville on Christmas Eve of 2002. The Defendant, Jerome Mayo, and three of his friends witnessed the victim crash his pickup truck into

a utility pole. Instead of assisting the injured victim, the Defendant stole items from the wrecked vehicle while others in the group held the victim at gunpoint. The victim was "pistol-whipped," and the four perpetrators of the crime fled in a car, but were quickly apprehended by police only a short distance from the crime scene. Several of the items stolen from the victim were discovered on the Defendant's person and in the car in which he was apprehended.

The Defendant was indicted on one count of especially aggravated robbery, see Tenn. Code Ann. § 39-13-403, by a Montgomery County grand jury in February of 2003. The indictment was later amended to charge the Defendant with only the offense of aggravated robbery accomplished with a deadly weapon. See Tenn Code Ann. § 39-13-402(a)(1). While his three co-defendants entered guilty pleas to various offenses related to this incident, the Defendant elected to go to trial. The Defendant received a jury trial in September of 2003.

The victim testified that he was driving home when someone darted out in front of him, and when he swerved to miss this person, he hit a telephone pole. The victim admitted he had consumed one beer, but denied that he was intoxicated. In the accident the victim hit his head against the steering wheel, and was bleeding from the injuries to his face. According to the victim, "four black males" approached him shortly after the accident. The victim first thought they came to render aid, but soon learned they were intent on robbing him. The victim said one of the men pulled a gun, although he was not sure which one, and the others stole items from his truck. Also, one demanded his wallet. The victim testified that he first faced the gunman, then looked away for a moment, and when he turned back towards the gunman he was "pistol whipped," or struck across his forehead with the gun. The victim then stumbled along the street until a local resident allowed him the use of a phone. The victim first called his girlfriend, and then called the police.

The victim testified that he recognized the Defendant as one of the four individuals who robbed him, and specifically remembered that the Defendant was carrying a small flashlight during the robbery. The items stolen in the robbery consisted of an in-dash CD player, several CDs, and, according to the victim, his cell phone. The victim described his injuries as a result of the incident as a "slight concussion and a broke (sic) nose, a busted lip and of course, my scar that I have now for the rest of my life." However, on cross-examination, the victim stated that the injuries to his nose and mouth were possibly due to the automobile accident. He also admitted that while he was "not sure" which of the four men held the gun, he was sure it was not the Defendant.

While the Defendant admitted his involvement in the incident, including his theft of the victim's property, his version of the events differed from the victim's testimony. The Defendant testified that he was sitting in a car with three of his friends when they "heard a squeak, like tires screaming on their brakes and then we heard a loud crash, boom! . . . [A]nd then we seen a car that was wrapped around a pole." The Defendant and his friends went to investigate. When the Defendant saw the victim, he immediately observed that he was drunk, and told the victim this. The victim confirmed his intoxicated state by stating "I'm full of it." The victim asked the Defendant if he could use his phone, but the Defendant refused because the victim was bloody. The Defendant

and his friends then returned to the car in which they were previously seated, and remained there for about five minutes.

The Defendant further testified that after about five minutes, he returned to the wrecked vehicle alone and began to remove the CD player from the dash of the wrecked vehicle. The victim, according to the Defendant, was no longer by his vehicle but had walked on down the street. The Defendant testified that he never possessed a weapon, and never even saw a gun that night until after the robbery was over and he was riding in a car with his three friends. The Defendant stated that as they were in the car fleeing the scene, his co-defendant, Burt Killins, told him that he had hit the victim with the butt of a gun. The Defendant stated that he stole a CD player, several CDs and the faceplate of the victim's cell phone from the victim's wrecked vehicle, but the victim was not present at the time and he had no knowledge of the use of a weapon.

Through the testimony of four Clarksville police officers and detectives involved in the case, evidence was presented which revealed that the Defendant and his three co-defendants were apprehended when the car in which they were fleeing ran a stop sign and almost hit a police cruiser. The victim had only moments earlier placed a call to the police, who discovered him standing in the street with his face bleeding. He was described as "upset" and "confused," but managed to give to the police a description of his assailants. This description matched the occupants of the vehicle that nearly hit the police car only a short distance away, and the four men were arrested. The Defendant was searched when he was placed under arrest. The Defendant had on his person "several knives," a black flashlight, several CDs, and a cell phone. The victim's CD player and a handgun were found in the car in which the Defendant was apprehended.

At the conclusion of the trial, the jury returned a verdict of guilty for the charged offense of aggravated robbery. A sentencing hearing was conducted in November of 2003, at which the State and defense agreed that the Defendant's prior criminal record required that he be sentenced as a Range II, multiple offender. The trial court found no applicable mitigating factors, but determined that the Defendant's previous history of criminal convictions above that necessary to establish his range, as well as his history of unwillingness to comply with conditions of a sentence involving release into the community, warranted enhancement above the twelve year presumptive sentence for his Class B felony offense. The trial court imposed a sentence of eighteen years to be served in the Tennessee Department of Correction.

The Defendant filed a motion for new trial in November of 2003, and an amended motion in December of 2004, arguing, among other issues, that the United States Supreme Court's Blakely decision precluded the Defendant's enhanced sentence. After a hearing on the new trial motion, the trial court upheld the Defendant's conviction, but issued an amended judgment lowering his sentence from eighteen years to fifteen years. Both the Defendant and the State timely filed a notice of appeal.

## ANALYSIS

The Defendant asserts that there is insufficient evidence for any rational trier of fact to find beyond a reasonable doubt that he is guilty of the offense of aggravated robbery. In support of this

assertion, the Defendant argues that he did not accomplish the thefts with a deadly weapon because he never personally held the gun or injured the victim. Additionally, the Defendant argues that the trial court did not err in reducing his sentence from eighteen to fifteen years.

## I. Sufficiency

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

In this case, the aggravated robbery charge required the State to prove beyond a reasonable doubt that the Defendant "[a]ccomplished" his robbery of the victim "with a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1). Robbery in Tennessee is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a).

The Defendant argues that because the victim testified that the Defendant was not the one who held the gun, the deadly weapon element of aggravated robbery could not be attributed to the Defendant. Additionally, the Defendant also argues that there was insufficient evidence to convict him of aggravated robbery based on a theory of criminal responsibility because he acted alone in the theft, and did not even know about the gun until the event was over. The Defendant further states that his theft and the other person's use of a weapon were "independent of each other" and "aside from [the victim's] testimony, there is no evidence to suggest otherwise." We find the Defendant's arguments are misplaced.

-4-

The evidence contained in the record on appeal demonstrates that the Defendant intentionally deprived the victim of his personal property. The Defendant admitted that he stole the items in question. The evidence also supports the jury's finding that the robbery was accomplished through violence or fear and with the use of a deadly weapon. Because the Defendant was criminally responsible for the actions of his cohorts in this crime, it does not matter for purposes of sufficiency review whether it was the Defendant or one of his co-defendant's who physically held the gun and struck the victim.

Tennessee statutes hold that "[a] person is criminally responsible for an offense committed by the conduct of another if: Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2). Criminal responsibility is not itself a separate crime; rather, it is "solely a theory by which the State may prove the defendant's guilt of the alleged offense. . . based upon the conduct of another person." State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999). Under a theory of criminal responsibility, a defendant's presence and companionship with the perpetrator of a felony before and after the commission of the offense are circumstances from which that defendant's participation in the crime may be inferred. See State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). To be held criminally responsible for the acts of another, a defendant need only "'associate himself with the venture, act with knowledge that the offense is to be committed, and share in the criminal intent of the principal in the first degree.'" Id. (citing State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994)).

The victim in this case testified that all four men approached him together and robbed him in concert. The victim further stated that a gun was used to accomplish this robbery, and he was injured when he was struck across the forehead. It is well settled law in Tennessee that "the testimony of a victim, by itself, is sufficient to support a conviction." State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Moreover, as already stated, a jury's guilty verdict accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See Bland, 958 S.W.2d at 659. The Defendant's claim that the victim's testimony was unreliable because of his confusion from the accident or possible intoxication is misplaced on appeal. Questions about the credibility of a witness and the weight and value of the evidence presented at trial are issues that are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate this evidence. See Evans, 108 S.W.3d at 236. In this case, the jury obviously accredited the testimony of the victim as to the events of the crime.

Additionally, the evidence reveals that the Defendant and his three co-defendants were apprehended together in the same vehicle attempting to flee from the scene of the crime. A handgun was found in this car. Furthermore, the Defendant testified that he and his three friends were also together before the robbery took place. Therefore, in addition to the direct evidence from the victim's testimony, the circumstantial evidence of Defendant's presence and companionship with the other perpetrators of the robbery both before and after the commission of the offense also supports the State's theory of criminal responsibility. See State v. Ball, 973 S.W.2d at 293.

Accordingly, we find that the Defendant was criminally responsible for the actions of his cohorts in the use of a deadly weapon during the robbery.

Having carefully reviewed the record, we conclude that the evidence is sufficient to support the jury's verdict in this case. The jury was properly instructed on the theory of criminal responsibility and the elements of the crime of aggravated robbery as well as the elements of several lesser-included crimes, such as simple robbery and facilitation of aggravated robbery. The jury elected to find the Defendant guilty of the crime of aggravated robbery. Viewed in the light most favorable to the State, we conclude that the evidence presented at trial established that the Defendant was guilty of the crime of aggravated robbery by taking the victim's property through violence or fear and with the use of a deadly weapon. Accordingly, we find the Defendant has failed to meet his burden of demonstrating that there was insufficient evidence submitted at trial for any rational trier of fact to conclude beyond a reasonable doubt that he was guilty of the crime for which he was convicted. Thus, this issue is without merit.

## II. Sentencing

The trial court originally enhanced the Defendant's sentence by six years after finding two enhancement factors applicable: the Defendant had a previous history of criminal convictions, and a history of unwillingness to comply with the conditions of a sentence involving release into the community. See Tenn. Code Ann. § 40-35-114(2) and (9). The trial court, upon reconsidering the issue at the new trial hearing, issued an amended judgment reducing the Defendant's sentence to fifteen years. The trial court relied on Blakely v. Washington, 542 U.S. 296 (2004) and concluded that its application of enhancement factor (9) was not appropriate.

The first time this case was before this Court, the State, citing State v. Gomez, 163 S.W.3d 632 (Tenn. 2005), appealed the Defendant's modified sentence, arguing that the trial court erred "by interpreting Blakely in a manner that forbid the application of enhancement factor (9) in calculating the [D]efendant's sentence." We agreed and remanded the case for re-sentencing.

The Blakely Court held that any fact that increases a sentence beyond the "relevant statutory maximum," defined as the maximum sentence that a judge may impose without making any additional findings of fact, must be submitted and proved to the jury beyond a reasonable doubt unless admitted by the defendant. Blakely, 542 U.S. at 301-02. Thus, adherence to Blakely requires that any enhancement factors, other than prior criminal history, can be applied only if found by a jury or admitted by the defendant. Id.

In State v. Gomez, 163 S.W.3d 632 (Tenn. 2005), our supreme court concluded that Tennessee's sentencing laws did not violate the dictates of Blakely. The United States Supreme Court recently vacated the judgment in Gomez and remanded that case to the Tennessee Supreme Court for further consideration in light of Cunningham v. California, 549 U.S. --, 127 S. Ct. 856 (2007). See Gomez v. Tennessee, 127 S. Ct. 1209 (2007). Following Gomez v. Tennessee, a panel of this Court has determined that Cunningham-Blakely precedents apply to our pre-2005 sentencing scheme:

[W]e can now hold rather than merely speculate that Tennessee's pre-2005-revision sentencing law, which mandated an inertial, presumptive sentence, was "just as determinative as Washington's scheme [as denounced in Blakely]—because the sentence was fixed by statute in the absence of fact-finding not embraced in the jury's verdict-and just as mandatory, as well—because the judge was not authorized to depart from the presumptive sentence unless he or she found certain facts not embraced in the jury's verdict . . . ."

State v. Mark A. Schiefelbein, No. M2005-00166-CCA-R3-CD, 2007 Tenn. Crim. App. LEXIS 213, at *3 (Tenn. Crim. App., Nashville, Mar. 7, 2007) (order granting and disposing of petition to rehear).

Citing to the Blakely decision, the trial court found that the Defendant's Sixth Amendment right to a trial by jury was impugned when it made determinations of fact for sentence enhancement purposes that were not submitted to a jury. In supplemental briefing, the States "acknowledges that the trial court was initially in error to increase the [D]efendant's sentence based upon his unwillingness to comply with conditions of a sentence involving release into the community" and that reduction of the Defendant's sentence to fifteen years was proper. The Defendant again contends that the trial court did not err in reducing his sentence. We agree.

We conclude the trial court did not err when it determined that application of enhancement factor (9) violated the dictates of Blakely and thereafter reduced the Defendant's sentence. Accordingly, we affirm the judgment of the trial court and reinstate the fifteen-year sentence.

## CONCLUSION
Based on the foregoing reasoning and authorities, we conclude that the evidence was sufficient to support the Defendant's conviction for aggravated robbery and that reduction of the Defendant's sentence based upon a Blakley violation was proper. The judgment is affirmed.

_____
DAVID H. WELLES, JUDGE