IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 10, 2013 Session

## HERBERT S. MONCIER v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Appeal from the Chancery Court for Davidson County**
**No. 11-218-IV     Russell T. Perkins, Chancellor**

_____

**No. M2012-00779-COA-R3-CV - Filed June 6, 2013**

_____

An attorney disciplined by the Board of Professional Responsibility brought suit against the Board asserting violations of the Open Meetings Act and the Public Records Act.  We have concluded that the trial court properly determined that the Open Meetings Act does not apply to the Board.  Furthermore, we find no error in the trial court's determination regarding the attorney's right to records from certain Board meetings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., and RICHARD H. DINKINS, JJ., joined.

Herbert S. Moncier, Knoxville, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; and Janet M. Kleinfelter, Deputy Attorney General; Nashville, Tennessee, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Herbert Moncier is an attorney licensed to practice law in Tennessee.  Some time prior to July 30, 2008, United States District Judge Ronnie Greer filed a complaint of attorney misconduct against Mr. Moncier with the Board of Professional Responsibility of the Supreme Court of Tennessee (the "Board"), the agency charged with the regulation and discipline of attorneys licensed in Tennessee.  At a meeting on July 13, 2008, the Board considered the results of disciplinary counsel's investigation and recommendation concerning

the complaint; the Board voted to institute formal disciplinary proceedings against Mr. Moncier by filing a formal petition for discipline.

Sometime prior to September 28, 2009, Knox County Circuit Court Judge Dale Workman filed a complaint of attorney misconduct against Mr. Moncier with the Board. The Board met on September 11, 2009, heard the investigation results and recommendations of disciplinary counsel, and voted to filed a supplemental petition for discipline against Mr. Moncier.

On January 22, 2010, Mr. Moncier made a request under the Public Records Act for copies of the following records:

1. Public notice of the meeting of the Board that acted on and approved a Petition for Discipline in *In Re Herbert S. Moncier*, 2008-1766-2-SG filed June 30, 2008;
2. Minutes of the meeting of the Board that acted on and approved a Petition for Discipline in *In Re Herbert S. Moncier*, 2008-1766-2-SG filed June 30, 2008;
3. Public notice of the meeting of the Board that acted on and approved a Supplemental Petition for Discipline in *In Re Herbert S. Moncier*, 2008-1766-2-SG filed on September 28, 2009;
4. Minutes of the meeting of the Board that acted on and approved a Supplemental Petition for Discipline in *In Re Herbert S. Moncier*, 2008-1766-2-SG filed September 28, 2009;
5. Public notice of the meeting of a hearing panel of the Board in *In Re Herbert S. Moncier*, 2008-1766-2-SG held beginning December 5, 2009;
6. Any statute, rule, policy, regulation or operating procedure of the Board that authorizes a hearing panel of the Board to meet privately;
7. Any statute, rule, policy, regulation or operating procedure of the Board that authorizes a hearing panel of the Board to deliberate privately.

The Board responded to Mr. Moncier's public records request with two letters dated February 1, 2010. In one letter, the Board denied Mr. Moncier's request for the public notices described in items #1 and #3 on the basis that no such records existed. With respect to items #5, #6, and #7, the Board further stated that a hearing panel of the Board was not a governing body under the Open Meetings Act and, therefore, was not subject to the requirements of that act. With the second letter, the Board provided Mr. Moncier with a copy of the "public portion" of the minutes of the Board meetings on June 13, 2008 and September 11, 2009.

Mr. Moncier initiated the present lawsuit against the Board on February 16, 2011. He asserted that the Board violated the Open Meetings Act at its meetings on June 13, 2008 and September 11, 2009 by meeting in private, failing to give public notice, and failing to keep minutes, including a record of the members' votes. Mr. Moncier also alleged that the Board violated the Public Records Act by refusing to provide him with all of the minutes from these two meetings. Mr. Moncier sought a declaratory judgment that a Board hearing panel was a "governing body" under Tenn. Code Ann. § 8-44-102(b) and was therefore subject to the Open Meetings Act. He also sought an award of attorney fees under the Equal Access to Justice Act, the Open Meetings Act, and the Public Records Act.

Mr. Moncier subsequently filed several amended complaints. He added allegations that the Board violated the Open Meetings Act and the Public Records Act at a meeting on March 12, 2012. In a second amended complaint, Mr. Moncier added his law office as a plaintiff and asserted a claim under the Declaratory Judgment Act as to whether the Board was a "governing body" under Tenn. Code Ann. § 8-44-102(b) and was therefore required to comply with the Open Meetings Act. In a third amended complaint, Mr. Moncier requested additional declarations under the Declaratory Judgment Act concerning the legality of the Board's actions under the Open Meetings Act and the Public Records Act. The court denied Mr. Moncier's request to file a fourth amended complaint.

The Board filed its initial motion to dismiss for failure to state a claim and lack of jurisdiction in April 2011. In May 2011, the parties agreed that Mr. Moncier would be allowed to file his third amended complaint and the Board's amended motion to dismiss would apply in full to that complaint. The Board argued that Mr. Moncier's claims for declaratory relief were barred by sovereign immunity and that he had failed to state a claim for relief under either the Open Meetings Act or the Public Records Act.

The trial court held a hearing on the Board's amended motion to dismiss on May 27, 2011. In a memorandum and order entered on September 23, 2011, the trial court dismissed Mr. Moncier's declaratory judgment action and his claims under the Open Meetings Act and the Equal Access to Justice Act. The court reserved ruling on the Public Records Act claims.

In accordance with a scheduling order, Mr. Moncier filed a supplement to his petition for access to public records. On September 26, 2011, the Board submitted for in camera inspection the minutes of the June 13, 2008 and September 11, 2009 meetings; a copy of the portion of the disciplinary counsel's quarterly reports regarding Mr. Moncier; and other exhibits referenced in the minutes. The court held a hearing on the remaining issues on September 29, 2011; the court requested additional briefing and a transcript of the hearing. After this hearing, Mr. Moncier filed a supplemental petition for access to records in which he included constitutional claims raised at the hearing.

On February 1, 2012, the trial court entered a memorandum and order in which it concluded that the Board was "not required to produce the records in question under the Public Records Act because the records in question are confidential and privileged, except that redacted portion of the minutes will be produced." The court dismissed Mr. Moncier's claim under the Public Records Act "except as applied to the redacted portion of the minutes." Incorporating its previous memorandum and order, the court dismissed Mr. Moncier's complaint in its entirety and denied his request for attorney fees under the Public Records Act because the Board "did not willfully withhold any documents."

Mr. Moncier filed a motion to revise, alter or amend the court's orders of September 23, 2011 and February 1, 2012, and the trial court denied the motion. The court also denied Mr. Moncier's motion for Rule 11 sanctions against the attorney representing the Board.

ISSUES ON APPEAL

Mr. Moncier has raised a multitude of issues on appeal. We have summarized and condensed them to the following:

1. Whether the trial court erred in holding that the Board is not a public body under the Open Meetings Act.
2. Whether the trial court erred in holding that the trial court did not have subject matter jurisdiction to render a declaratory judgment regarding the Board.
3. Whether the trial court erred in dismissing the petition for access to public records.
4. Whether the trial court erred in failing to find merit in Mr. Moncier's constitutional arguments.
5. Whether the trial court erred in denying Mr. Moncier's request for attorney fees.
6. Whether the trial court erred in denying Mr. Moncier's motion to file a fourth amended complaint.
7. Whether the trial court erred in denying Mr. Moncier's motion for sanctions under Rule 11.

ANALYSIS

This case presents unique issues concerning the application of the Open Meetings Act and the Public Records Act to the Judicial Branch of Tennessee. Despite the uniqueness of the issues, we are convinced that prior Tennessee Supreme Court cases, by which we are bound, dictate our decisions.

The Tennessee Supreme Court has inherent authority to license and regulate attorneys who practice law in this state. *Smith Cnty. Educ. Ass'n v. Anderson*, 676 S.W.2d 328, 333 (Tenn. 1984). It can make rules to implement this authority. *Petition of Tenn. Bar Ass'n*, 539 S.W.2d 805, 807 (Tenn. 1976). Tennessee Supreme Court Rule 8 establishes the ethical rules to which attorneys must adhere and Rule 9 establishes the mechanism by which the ethical rules are enforced. Rule 9, section 5 creates the Board of Professional Responsibility. Tenn. Sup. Ct. R. 9, § 5. The Board derives all of its powers and functions from the Supreme Court. *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 472 (Tenn. 2003). The Board is an agent of the Supreme Court. *Id*.

## Open Meetings Act

Mr. Moncier maintains that the Tennessee Open Meetings Act,[1] Tenn. Code Ann. § 8-44-101 *et seq.*, applies to the meetings of the Board of Professional Responsibility at which the Board determined to institute formal disciplinary proceedings against him. The Open Meetings Act, enacted in 1974, requires that meetings of any governing body are to be "open to the public at all times, except as provided by the Constitution of Tennessee." Tenn. Code Ann. § 8-44-102(a). As pertains to this lawsuit, "governing body" is defined as "[t]he members of any public body which consists of two (2) or more members, with the authority to make decisions for or recommendations to a public body on policy or administration . . . ." Tenn. Code Ann. § 8-44-102(b)(1)(A). The term "public body" is not defined in the act, but the Tennessee Supreme Court has stated:

> It is clear that for the purpose of this Act, the Legislature intended to include any board, commission, committee, agency, authority or any other body, by whatever name, whose origin and authority may be traced to State, City or County *legislative action* and whose members have authority to make decisions or recommendations on policy or administration affecting the conduct of the business of the people in the governmental sector.

*Dorrier v. Dark*, 537 S.W.2d 888, 892 (Tenn. 1976)(emphasis added).

Mr. Moncier argues that the Board of Professional Responsibility was created by legislative action pursuant to Tenn. Code Ann. § 16-3-404[2] when the General Assembly

---

[1]The Open Meetings Act is often referred to as the "Sunshine Law." *See Mayhew v. Wilder*, 46 S.W.3d 760, 768 (Tenn. Ct. App. 2001).

[2]Tenn. Code Ann. § 16-3-404 states:

The supreme court shall fix the effective date of all its rules; provided, that the rules shall

(continued...)

approved the Supreme Court rule that established the Board (now Tenn. Sup. Ct. R. 9). Mr. Moncier does not point to a specific legislative resolution adopting Tenn. Sup. Ct. Rule 9 and, indeed, he cannot. The forerunner of what is now Rule 9 was adopted by the Supreme Court on December 18, 1975. *Petition of Tenn. Bar Ass'n*, 532 S.W.2d 224, 230 (Tenn. 1975) ("On the date this opinion is released, this Court has adopted a new Rule, Rule 42—Rules of Disciplinary Enforcement—that requires annual registration of lawyers and payment of an annual license fee to support the Office of Disciplinary Counsel and staff.").[3] What was then Rule 42 went into effect on January 1, 1976. *Id.* at 245. The rule was not submitted to the legislature for approval. We also note that the last comprehensive revision of Rule 9 occurred in 2003 to 2006. The compiler's notes to Rule 9 state: "In its order of April 25, 2006, the Court ordered that the amendments to Rule 9 be adopted effective July 1, 2006." These revisions were not submitted to the legislature.

It is abundantly clear that the Tennessee Supreme Court has never considered rules governing the disciplining of attorneys to be covered by Tenn. Code Ann. § 16-3-404. Statutes should be read in context and in conjunction with related statutory provisions. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004); *State v. Allman*, 68 S.W.2d 478, 479 (Tenn. 1934) ("It is, of course, well settled that statutes forming a system or scheme should be construed so as to make that scheme consistent in all its parts."). *See also Wells v. Tenn. Bd. of Regents*, 231 S.W.3d 912, 917 (Tenn. 2007) ("Statutes may be construed *in pari materia* in order to ascertain their purpose or intent."). The only rules mentioned in Tennessee Code Annotated, chapter 16, section 3, part 4 are "rules of practice,"[4] and "general rules" regarding "the forms of process, writs, pleadings and motions, and the practice and procedure in all of the courts of this state in all civil and criminal suits, actions and proceedings."[5] These references do not encompass rules governing the discipline

---

[2](...continued)
not take effect until they have been reported to the general assembly by the chief justice at or after the beginning of a regular session of the general assembly, but not later than February 1 during the session, and until they have been approved by resolutions of both the house of representatives and the senate.

[3]The Supreme Court found that, "The present disciplinary procedures of investigation and disposition of charges are inadequate to do justice to the public and the profession." *Petition of Tenn. Bar*, 532 S.W.2d at 229.

[4]Tenn. Code Ann. § 16-3-401.

[5]Tenn. Code Ann. § 16-3-402.

of attorneys.[6]

Because the Board of Professional Responsibility was not created by legislative action, it cannot be a public body. Therefore, it cannot be a governing body. Consequently, the Open Meetings Act does not apply to the Board.

## Declaratory Judgment Act

Mr. Moncier asserts that the trial court erred in ruling that it lacked subject matter jurisdiction to render a declaratory judgment regarding the application of the Open Meetings Act to the Board of Professional Responsibility. According to Mr. Moncier, it was "critical" that he be able to proceed under both the Open Meetings Act and the Declaratory Judgment Act because of the different remedies provided under the two statutes. In light of our conclusion that the Open Meetings Act does not apply to the Board, however, we need not consider Mr. Moncier's argument regarding the Declaratory Judgment Act.

## Public Records Act

Mr. Moncier makes several different arguments under the Public Records Act. He asserts that the trial court erred in ruling that some of the records submitted for in camera viewing by the court were not public records. Mr. Moncier also argues that the trial court erred in dismissing his petition under the Public Records Act and declining to tax costs against the Board.

We begin with a review of the record requests at issue. In his January 2010 letter, Mr. Moncier requested: "Minutes of the meeting of the Board that acted on and approved a Petition for Discipline in *In Re Herbert S. Moncier*, 2008-1766-2-SG filed June 30, 2008," and "Minutes of the meeting of the Board that acted on and approved a Supplemental

---

[6]Interpreting Tenn. Code Ann. § 16-3-404 to apply to Supreme Court rules on attorney discipline would raise serious constitutional concerns under the separation of powers doctrine:

> It is well settled that the licensing and regulation of attorneys practicing law in courts of Tennessee is squarely withing the inherent authority of the judicial branch of government. *Belmont v. Board of Law Examiners*, 511 S.W.2d 461 (Tenn. 1974). Furthermore, the "Supreme Court has original and exclusive jurisdiction to promulgate its own Rules. Its rule making authority embraces the admission and supervision of members of the Bar of the State of Tennessee." *Petition of Tennessee Bar Ass'n*, 539 S.W.2d 805, 807 (Tenn. 1976).

*Smith Cnty. Educ. Ass'n*, 676 S.W.2d at 333 (application of the open meetings act to discussions between a public body and its attorney regarding pending litigation violates the separation of powers doctrine).

Petition for Discipline in *In Re Herbert S. Moncier*, 2008-1766-2-SG filed September 28, 2009." On appeal, Mr. Moncier alleges that he did not request all of the records submitted to the court for its inspection, but only the minutes themselves. In its description of the items submitted for inspection, the court stated that they included the minutes of the two meetings as well as the quarterly reports of disciplinary counsel attached to those minutes and any other exhibits referenced in the minutes. Because all of the documents submitted to the court were incorporated with the minutes, the court reasonably concluded that it needed to make a determination as to whether Mr. Moncier was entitled to them. Mr. Moncier argues that even the quarterly reports, which include the results of the disciplinary counsel's investigation and his or her recommendation regarding each case, are public records and should be released.

The Public Records Act provides that "[a]ll state, county and municipal records shall, at all times during business hours . . . be open for personal inspection by any citizen of this state, and those in charge of the records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law." Tenn. Code Ann. § 10-7-503(a)(2)(A). The term "state record or records" means "all documents, papers, letters, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental agency." Tenn. Code Ann. § 10-7-503(a)(1)(A). Under the Public Records Act, there is a presumption in favor of access to public records. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 349, 360 (Tenn. 2008). Thus, the records in question are open to public inspection "unless otherwise provided by state law." Tenn. Code Ann. § 10-7-503(a)(2)(A).

The disciplinary rules, as adopted by the Tennessee Supreme Court, have the force and effect of law. *The Tennessean v. Tenn. Dep't of Pers.*, No. M2005-02578-COA-R3-CV, 2007 WL 1241337, at *7 (Tenn. Ct. App. Apr. 27, 2007); *Coats v. Smyrna/Rutherford Cnty. Airport Auth.*, No. M2000-00234-COA-R3-CV, 2001 WL 1589117, at *6 (Tenn. Ct. App. Dec. 13, 2001); *Clinard v. Blackwood*, No. 01A01-9801-CV-00029, 1999 WL 976582, at *6 (Tenn. Ct. App. Oct. 28, 1999), *aff'd,* 46 S.W.3d 177 (Tenn. 2001). Thus, Supreme Court Rule 9 is a law within the meaning of the exception to public inspection of records found at the end of Tenn. Code Ann. § 10-7-503(a)(2)(A). It is a direction by the Supreme Court, the entity with inherent authority to regulate the conduct of lawyers, as to how complaints of ethical violations against lawyers are addressed.

Section 25 of Rule 9 governs confidentiality:

25.1. All matters, investigations, or proceedings involving allegations of

misconduct by or the disability of an attorney, including all hearings and all information, records, minutes, files or other documents of the Board, district committee members and Disciplinary Counsel shall be confidential and privileged, and shall not be public records, until or unless:

(a) a recommendation for the imposition of public discipline, without the initiation of a formal disciplinary proceeding pursuant to Section 8.2, is filed with the Supreme Court by the Board; or

(b) a petition to initiate a formal disciplinary proceeding is filed pursuant to Section 8.2; or

(c) the respondent-attorney requests that the matter be public; or

(d) the investigation is predicated upon conviction of the respondent-attorney for a crime; or

(e) in matters involving alleged disability, this Court enters an order transferring the respondent-attorney to disability inactive status pursuant to Section 21.

Tenn. Sup. Ct. R. 9, § 25.1. Pursuant to subsection 25.3, "[a]ll work product and work files (including internal memoranda, correspondence, notes and similar documents and files) of the Board, district committee members, and Disciplinary Counsel shall be confidential and privileged and shall not be public records." Tenn. Sup. Ct. R. 9, § 25.3. Furthermore, under section 25.8, "[n]othing in this Section is intended to limit or repeal any confidentiality or privilege afforded by other law." Tenn. Sup. Ct. R. 25.8.

Section 25.1 of Supreme Court Rule 9 provides that all Board records regarding allegations of attorney misconduct are confidential and privileged, and not public records, unless one of the enumerated exceptions applies. In arguing that the portions of the quarterly reports regarding his case should be public, Mr. Moncier emphasizes the provisions of subsection 25.1(b) of Tenn. Sup. Ct. Rule 9, which makes Board records public upon the filing of a petition to institute formal disciplinary proceedings. We reject Mr. Moncier's position that subsection 25.1(b) trumps all of the other subsections of section 25. Rather, all of the parts of section 25 must be read together, and other provisions of this section are relevant here. *See Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d at 469. Subsection 25.3 makes "[a]ll work product and files" confidential and privileged; and subsection 25.8 makes clear that Section 25 does not limit "confidentiality or privilege afforded by other law." Tenn. Sup. Ct. R. 9, §§ 25.3, 25.8.

In the court's memorandum and opinion entered on February 1, 2012, the court described the documents presented by the Board for in camera inspection: the minutes of the two Board meetings at issue and, "as an attachment to these minutes, a copy of the corresponding written quarterly report submitted by disciplinary counsel, along with any

other exhibits referenced in the minutes." The court clarified that the Board submitted for inspection only those portions of the quarterly reports regarding Mr. Moncier. Later in its opinion, the court described the contents of the quarterly reports as including "detailed accounts of disciplinary counsel's analysis and impressions, which were communicated to the Board during the non-public disciplinary portion of the meeting."

The trial court concluded that the quarterly reports "are wholly confidential under both the work product doctrine and the attorney client privilege." We agree with the trial court's analysis and conclusion. The attorney-client privilege protects communications regarding the subject matter of representation "made with the intention that the communication be kept confidential." *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 602, 616 (Tenn. Ct. App. 2006) (citing Tenn. Code Ann. § 23-3-105). The work product doctrine more broadly protects "any document prepared in anticipation of litigation by or for the attorney." *Id.* Subsections 25.3 and 25.8 of Rule 9 of the Supreme Court Rules provide that such records are confidential and are not public records.

Mr. Moncier also argues that the trial court erred in dismissing his petition under the Public Records Act and declining to tax costs to the Board. This argument is based upon the fact that the Board was required to produce some documents that it had previously refused to produce—namely, that portion of the minutes themselves related to Mr. Moncier's case. Based upon his successful attempt to obtain those minutes, Mr. Moncier asserts that his claim under the Public Records Act should not have been dismissed and that the costs should have been taxed against the Board.

The trial court's dismissal of Mr. Moncier's claims under the Public Records Act specifically excepted his claim as to "the redacted portion of the minutes." Because the trial court did not dismiss that portion of Mr. Moncier's claim that was found to have merit, the trial court's disposition was appropriate.

As to the issue of costs, the Public Records Act provides that a court "may, in its discretion" award a requesting party "all reasonable costs involved in obtaining the record" if it finds that the governmental entity "knew that such record was public and willfully refused to disclose it." Tenn. Code Ann. § 10-7-505(g); *see generally Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d 681, 689 (Tenn. 1994). Courts have interpreted this language to require a showing of bad faith. *See Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn. Ct. App. 1999). Mr. Moncier's third amended complaint contains no allegations that the Board's refusal to produce the minutes was in bad faith. We find no error in the trial court's decision not to award Mr. Moncier his costs.

Constitutional claims

-10-

In this appeal, Mr. Moncier raises a number of constitutional challenges. He argues that the trial court erred in failing to hold that he had a constitutionally protected right to practice law once licensed by the state; that the trial court's ruling that the Supreme Court has exclusive jurisdiction over the discipline of attorneys deprives him of remedies under the Declaratory Judgment Act and the Open Meetings Act in violation of the Tennessee Constitution; that the trial court erred in failing to apply the principles of due process; and that the trial court erred in failing to recognize his right to petition the courts for Open Meetings Act violations and a declaratory judgment pursuant to the Tennessee and United States Constitutions.

In making these arguments, Mr. Moncier focuses on the reasoning applied by the trial court in rejecting his claims under the Open Meetings Act and the Declaratory Judgment Act. We note, however, that these constitutional issues were not raised by Mr. Moncier in his third amended complaint and that the record does not reflect that these issues were otherwise raised by Mr. Moncier in the proceedings below. We, therefore, decline to address these constitutional arguments for the first time on appeal. Moreover, to the extent that Mr. Moncier challenges the constitutionality of Tennessee Supreme Court Rule 9, we note that this court is without jurisdiction to rule upon the validity of the Supreme Court's rules. *See Smith Cnty. Bd. of Educ.*, 676 S.W.2d at 333; *Barger v. Brock*, 535 S.W.2d 337, 342 (Tenn. 1976).[7]

## Attorney fees

Mr. Moncier argues that the trial court erred in declining to award him attorney fees under the Open Meetings Act, the Public Records Act, and the Equal Access to Justice Act.

The award of attorney fees is within the trial court's discretion and will not be overturned absent an abuse of discretion. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). In reviewing the award, we look at the evidence in the light most favorable to the trial court's decision. *Id.* Thus, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007).

---

[7]The trial court did address constitutional issues raised by Mr. Moncier in a supplemental petition for access to records filed in October 2011. Mr. Moncier asserted that he was entitled to the requested records under the First, Fifth, and Fourteenth Amendments to the United States Constitution and Article 1, sections 1, 2, 17, 18, 19 and 23 of the Tennessee Constitution. It does not appear that Mr. Moncier assigns error on appeal to the trial court's decision to reject these constitutional arguments. We note, however, that we find no error in the trial court's finding that Mr. Moncier failed to overcome the presumption of constitutionality. *See Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009).

Tennessee abides by the "American rule" regarding the payment of attorney fees. *See Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). Thus, for a court to award attorney fees, there must be statutory authority or a contractual agreement. *Id.* Otherwise, each party to a lawsuit bears the expense of his or her own attorney fees. *Id.* at 309.

Mr. Moncier's claims under the Open Meetings Act failed because the act does not apply to the Board. Moreover, our Supreme Court has recently held that the Open Meetings Act does not provide for the award of attorney fees to a successful litigant. *Fannon v. City of LaFollette*, 329 S.W.3d 418, 433 (Tenn. 2010). The trial court did not err in declining to award Mr. Moncier attorney fees.

As previously discussed with respect to costs, the Public Records Act authorizes a court to award attorney fees only if there was a willful refusal to disclose, which requires a showing of bad faith. There is no allegation of bad faith in this case. The trial court acted within its discretion in declining Mr. Moncier's request for an award of attorney fees.

Under the Equal Access to Justice Act, a court "may award reasonable and actual fees and other expenses not to exceed ten thousand dollars ($10,000) to the prevailing party unless the prevailing party is a state agency." Tenn. Code Ann. § 29-37-104(a)(1). The act applies with regard to civil actions brought by a state agency or actions for judicial review pursuant to Tenn. Code Ann. § 4-5-322, the Administrative Procedures Act. Tenn. Code Ann. § 29-37-104(a)(1). This action was brought by Mr. Moncier, not by a state agency, and is not a suit for judicial review under the Administrative Procedures Act. Moreover, as the trial court found, Mr. Moncier did not prevail in this case. We find no abuse of discretion in the trial court's decision to dismiss Mr. Moncier's claim for attorney fees under the Equal Access to Justice Act.

<u>Fourth amended complaint</u>

Mr. Moncier further argues that the trial court erred in denying him permission to file a fourth amended complaint. We find no merit in this argument.

The denial of a motion to amend the pleadings is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Hawkins v. Hart*, 86 S.W.3d 522, 532 (Tenn. Ct. App. 2001). In ruling on a motion to amend, a trial court should consider several factors including any lack of notice to the opposing party, the repeated failure to cure deficiencies by previous amendments, any undue prejudice to the opposing party, and the futility of amendment. *Kincaid v. S. Trust Bank*, 221 S.W.3d 32, 42 (Tenn. Ct. App. 2006). A trial court does not abuse its discretion in denying a motion to

amend where the grant of the motion would be futile. *Forsythe v. Gibbs*, No. M2001-02055-COA-R3-CV, 2002 WL 1869415, at *5 (Tenn. Ct. App. Aug.15, 2002).

Mr. Moncier filed his fourth request for permission to amend his complaint to plead that, if the Board was found to be created by the judiciary and not the legislature, the open courts clause of Article 1, section 17 of the Tennessee Constitution and the common law right to access to judicial records made the Board's records public. In denying Mr. Moncier permission to amend his complaint on the ground of futility, the trial court stated:

> Defendant is not a court under Tennessee law generally or specifically within the meaning of Art. 1, § 17 of the Tennessee Constitution, even if disciplinary proceedings against attorneys in Tennessee are construed to be *quasi-criminal* in nature. *See In Re Ruffalo*, 390 U.S. 544, 550-51 (1968). Given the language of the constitutional provision, it appears that it is the nature of the tribunal, not the nature of the proceedings, that determines whether the Tennessee Constitution's Open Courts guarantee applies. *See Staples v. Brown*, 113 Tenn. 639, 85 S.W. 254, 255 (1905). The Court determines, therefore, that neither Defendant nor its panels are courts. Additionally, it appears that Plaintiff's claim under Art. 1, § 17 of the Tennessee Constitution is barred by the doctrine of sovereign immunity. *See Greenhill v. Carpenter*, 718 S.W.2d 268, 270 (Tenn. Ct. App. 1986).

We find no abuse of discretion in the trial court's decision. Mr. Moncier had already been permitted multiple amendments to his complaint, and the proposed amendment did not rely upon new information. Moreover, there is no legal basis to support Mr. Moncier's contention that the Board should be considered a court under the open courts clause of the Tennessee Constitution.

## Rule 11 sanctions

Mr. Moncier filed a motion for sanctions against the Board's attorney pursuant to Tenn. R. Civ. P. 11.03 on the basis that the attorney signed a certificate of service in violation of Tenn. R. Civ. P. 11.02(2) and (3). The trial court denied the motion, finding that it was without merit.

A trial court's ruling on a Rule 11 motion is reviewed under the deferential abuse of discretion standard. *Brown v. Shappley*, 290 S.W.3d 197, 200 (Tenn. Ct. App. 2008). Such a determination requires the court to make a determination regarding the reasonableness of the attorney's conduct. *Id.*

-13-

The factual basis for Mr. Moncier's motion is as follows: After a hearing on September 29, 2011, the trial court ordered that a transcript of the hearing be filed with the court. The Board's attorney filed the transcript with the court on October 14, 2011 and served notice on Mr. Moncier. The notice stated: "The Board of Professional Responsibility of the Supreme Court of Tennessee hereby gives notice of the filing of the attached transcript of the telephonic hearing before this Court on Thursday, September 29, 2011." On November 22, 2011, Mr. Moncier served the Board with a motion for Rule 11 sanctions on the basis that the Board did not provide him with a copy of the transcript along with the notice. On December 13, 2011, the Board filed a corrected notice of filing of transcript, which read as follows: "The Board of Professional Responsibility of the Supreme Court of Tennessee hereby gives notice of the filing of the transcript of the telephonic hearing before this Court on Thursday, September 29, 2011."

Under Tenn. R. Civ. P. 11.03(1), a motion for sanctions shall not be filed with the court unless, "within 21 days after service of the motion (or such period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." In this case, the Board's attorney corrected the alleged error within 21 days of being served with the motion for sanctions. Thus, the trial court acted within its discretion in rejecting Mr. Moncier's request for Rule 11 sanctions.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed in all respects. Costs of appeal are assessed against Mr. Moncier, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

-14-