Al S. BARGER et al.

v.

Ray L. BROCK, Jr., et al.

Supreme Court of Tennessee.

March 30, 1976.

OPINION AND ORDER

FONES, Chief Justice.

This action involves the right or power of the Chancery Court to declare a Rule of the Supreme Court to be violative of the Constitution of Tennessee and enjoin its enforcement.

The plaintiffs, Al S. Barger, Leon W. Davis, Jr., U. L. McDonald, Joe M. Parker and Richard H. Winningham are practicing attorneys in Chattanooga, Hamilton County, Tennessee and are solicitors and officers of this Court.

The defendants, Ray L. Brock, Jr., Robert E. Cooper, William H. D. Fones, William J. Harbison and Joseph W. Henry, constitute the Supreme Court of Tennessee and are sued in their official capacity as such Court. There is no allegation or suggestion that they, or any of them, have any pecuniary or property interest in the issues here presented.[1]

The defendant, R. A. Ashley, is sued in his official capacity as the Attorney General of the State of Tennessee and is made a party "in case the Court should find it necessary to pass upon the constitutionality of any statute of the State of Tennessee."

I.

*Inter alia*, the Complaint filed over the signature of Thomas A. Harris, their solicitor of record, and also a solicitor and officer of this Court, alleges:

> At some time unknown to the plaintiffs, and without notice to them, the

1. Constitution of Tennessee, Art. 6, Sec. 11; *Chumbley v. Peoples Bank & Trust Co.*, 165 Tenn. 655, 57 S.W.2d 787 (1933).

defendant Justices as the Supreme Court of Tennessee undertook consideration of an original "petition" presented to said Court *under circumstances not fully known to your plaintiffs,* calling for the defendants to impose an annual "license fee" or *tax* upon the plaintiffs and all other attorneys practicing within the State of Tennessee. Your plaintiffs are advised that on December 18, 1975, the defendants adopted a *so-called* "Rule of Court" called "Rule 42," which in Section 20 thereof purports to levy an annual fee or *tax* upon all practicing attorneys in this State. (Emphasis supplied).

It is further alleged with respect to this Court:

(T)heir *ex parte* action in purporting to *levy a tax* on lawyers is wholly without and beyond their authority and is an *exercise of arbitrary power* which is prohibited by our Constitution . . . (Emphasis supplied).

They further allege:

The portions of "Rule 42" purporting to impose a *tax* or "annual fee" on lawyers are void as an *affront to the Constitution of the State of Tennessee* . . . (Emphasis supplied).

It is alleged that only the Legislature has the power to tax, citing Article 2, § 28, Article 2, § 2, and Article 6, § 2.

The prayer is (1) "that so much of Rule 42 as purports to levy a tax or 'annual license fee' on the plaintiffs, or to suspend them from the practice of law, be declared void as contravening the Constitution of this State"; (2) that "the defendant Justices be enjoined from imposing the tax or license fee" and (3) for such other relief as "the Constitution of the State and the preservation of liberty may require." There is no prayer for process.

## II.

On 9 May 1974, the Tennessee Bar Association filed a petition in this Court requesting and recommending the adoption of a Rule of Court establishing a comprehensive disciplinary procedure to be funded and maintained by an annual license fee payable by members of the Bar.

On 6 November 1974, thirteen (13) members of the Bar of this Court filed an intervening petition urging that this Court promulgate a Rule organizing, unifying or integrating the State Bar of Tennessee.

By supplemental petition filed 12 December 1974, the Bar Association asserted the inadequacy of the then Rule 42 and urged the Court to replace it with Rules of Disciplinary Enforcement exhibited with the petition.

This Court, being acutely aware of the impact of these recommendations upon the members of the Bar and their direct relationship to the public welfare, and being desirous of giving all concerned a full opportunity to be heard, and being unwilling to proceed on an *ex parte* basis and without notice, entered an order on 22 November 1974, granting leave to all interested parties to file *amicus curiae* briefs and gave notice that oral argument would be heard upon the issues thus presented. Pursuant to this solicitation, numerous briefs, affidavits and letters in support of or opposition to these proposals were filed.

We digress at this juncture to address the matter of whether the profession had notice of these proceedings. First, it should be pointed out that at all stages, the news media, by editorial comment and by news stories, gave these matters massive publicity.

The voluntary Tennessee Bar Association[2] kept its membership fully informed through its most excellent publications.

The December 1974 issue of the *Tennessee Lawyer* (Vol. 23, No. 4) devoted the entire front page to a story headlined INTERVENING PETITION TO UNIFY T.B.A. FILED BY GROUP OF LAWYERS.

---

2. Three of the five plaintiffs are members of the Tennessee Bar Association as is their attorney of record.

The ensuing story pointed out that this petition was filed "in the pending matter of: *In Re: The Petition of the Tennessee Bar Association, Ex Parte.*" The concluding paragraph reads as follows:

The Court has granted interested parties leave to file amicus curiae briefs. Those supporting the petitions are to be filed on or before December 27, 1974, those in opposition on or before January 17, 1975. The Court will hear oral arguments on Thursday, January 23, 1975. Proponents will be heard from 9:00 a. m. until noon. Those opposing will be heard from 1:30 p. m. to 4:30 p. m. Lawyers desiring to present oral argument should notify the Clerk of the Court at Nashville.[3]

Oral argument was heard on 23 January 1975, and at this time the Court was the beneficiary of numerous presentations and all issues were fully and ably discussed. It is of significance that among those appearing at the Bar of this Court was the then President of the Chattanooga Bar Association. It is of further significance that the Chattanooga Bar Association filed an intervening petition.

Again realizing that these were issues of overriding professional and public concern, the Court[4] conducted numerous conferences and proceeded with deliberation in its consideration of these vital matters. Finally, after all concerned had been afforded full opportunity to be heard in person, by petition, letter, affidavit and brief, the Court on 18 December 1975, three hundred and twenty-nine (329) days after argument, released its opinion, which *inter alia* announced the adoption of Rule 42, relating to Disciplinary Enforcement. See *In Re: Petition of Tennessee Bar Association, etc.*, 532 S.W.2d 224 (Tenn.1975).

 The basic legal issue presented to the Court was its right, power and authority to unify the Bar and/or adopt a disciplinary rule. The Court's ruling was clear:

We respectfully overrule all issues raised in this proceeding questioning the authority of the Court to unify the bar of this state or to require annual registration and license fees as a condition to the continued practice of law.

The holding in this case, is the established law of Tennessee and is binding upon all the courts of the state.

### III.

Tennessee's judicial structure is established by our constitution and statutes on a three-tiered basis. In ascending order of power and authority they are: (1) *nisi prius* or trial courts (circuit and chancery); (2) intermediate appellate courts (Court of Appeals and Court of Criminal Appeals) and (3) a Supreme Court.

The Constitution of Tennessee obviously contemplates the supremacy of the Supreme Court.

The judicial power of this State shall be vested in one Supreme Court and in such Circuit, Chancery and other inferior Courts as the Legislature shall from time to time, ordain and establish; . . . (Art. 6, Sec. 1).

 Thus the Supreme Court is a direct creature of the Constitution and constitutes the supreme judicial tribunal of the state and is a court of last resort. All other courts are constitutionally inferior tribunals subject to the actions of the Supreme Court. Its adjudications are final and conclusive upon all questions determined by it, subject only to review, in appropriate cases by the Supreme Court of the United States. *Railroad v. Bryne*, 119 Tenn. 278, 104 S.W. 460 (1907).

Chancellor Gibson lists the *Great* Duties of the Supreme Court. See § 1376, *Gibson's*

---

**3.** This paragraph, with slight modification was taken from the Court's order of 22 November 1974.

**4.** The Honorable C. S. Carney was designated to sit upon this Court vice Mr. Justice Henry, who recused himself from consideration of the matter of unification of the Bar. After this Court promulgated its opinion of 18 December 1975, Justice Henry signed the order adopting Rule 42.

*Suits in Chancery*, Fifth Edition (1956). One of these "great duties", to the extent here applicable, is:

> To keep . . . the courts . . . within their constitutional and lawful jurisdiction.

In the ensuing section he discusses the objects of the people in ordering and establishing the Supreme Court. He suggests that the first object was:

> (T)o have a tribunal to supervise all the other Courts of the State; to keep them within the limits of the law and the Constitution . . .

Then by footnote 17 to the same section he lists the considerations prompting the Court. Among these:

> To so rule that all inferior courts will be kept within the orbits of their respective jurisdictions.

Judge Abraham Caruthers, in *History of a Lawsuit*, Sec. 20 (Eighth Edition 1963) expresses it thusly:

> The power to enforce its judgments includes the power to protect them from interference, and the Court may use any process to secure that protection and enforcement; *the court is supreme in fact as well as in name.* (Emphasis supplied).

■ It is a controlling principle that inferior courts must abide the orders, decrees and precedents of higher courts. The slightest deviation from this rigid rule would disrupt and destroy the sanctity of the judicial process. There would be no finality or stability in the law and the court system would be chaotic in its operation and unstable and inconsistent in its decisions. Personal and property rights would be insecure and litigation would know no end.

Fortunately our courts recognize and apply the rule that lower courts are bound by the decisions of higher courts. As held in *Bloodworth v. Stuart*, 221 Tenn. 567, 428 S.W.2d 786 (1968) "the Court of Appeals has no authority to overrule or modify Supreme Court's opinions."

The principle by which the procedural aspects of this case must be controlled was announced by the Supreme Court, meeting in Sparta, in August 1832, in *Dibrell v. Eastland*, 11 Tenn. 507. A Circuit Judge had ordered the issuance of a supersedeas of a decree of the Supreme Court ordering property sold for the satisfaction of certain money judgments.

The opinion of Chief Justice John Catron, who later served as an Associate Justice of the Supreme Court of the United States for twenty-eight years, is a model of brevity and clarity. It reads, in full, as follows:

> This Court is of opinion, that a circuit judge has no power or jurisdiction to grant an order for a supersedeas to the judgments or decrees of this Court, more than a justice of the county court has power and jurisdiction to cause to be superseded the decrees and judgments of the circuit courts. The power did not exist in this case, and it will equally apply to every decree and judgment, civil and criminal, that the Supreme Court has or may render. Let the supersedeas be quashed. 11 Tenn. at 507.

In *Hurt v. Long*, 90 Tenn. 445, 16 S.W. 968 (1891), the Court, in passing upon a bill filed in chancery court to review a decree of the Supreme Court, said:

> (T)hat exact question was made in a case at Knoxville in 1847. It was there held that no bill of review lies in the chancery court to review a decree of the supreme court. *Wallen v. Huff*, Thomp.Tenn.Cas. 21.

> This is obviously correct, as, among the numerous methods for the correction of errors of law and fact committed in the inferior courts, the appeal is the last and final one, and it could not be on any ground assumed that this might be tried; and then all the others, practically included in this, might be tried again. This practice would be productive of intolerable evil, and would make litigation endless . . . 90 Tenn. at 449, 16 S.W. at 969.

In *Ser-Nestler, Inc. v. General Finance Loan Company*, 167 So.2d 230 (Fla.App. 1974), involving a Florida rule of civil procedure, the Court said:

The Supreme Court is vested with the sole authority to promulgate, rescind and modify the rules, and until the rules are changed by the source of authority, they remain inviolate. 167 So.2d at 232.

In *Soft Water Utilities, Inc. v. LeFevre*, 293 N.E.2d 788 (Ind.App.1973) the Court, referring to a rule of the Supreme Court, said:

The rules of the Supreme Court are binding on the courts as well as on the litigants. No court except the Supreme Court can alter, amend or change the rules. No inferior court may circumvent the rules and thereby avoid them. 293 N.E.2d at 790.

Again, in *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973), the Court made this pithy observation:

(I)t is not considered good form for a lower court to reverse a superior one. Such actions are unsettling in the law which we ought to strive to make certain, and result in a disorderly judicial process. 507 P.2d at 779.

The authority of this Court to make rules governing the practice of law is traditional, inherent and statutory. Such power is indispensable to the orderly administration of justice.

We hold that the inferior courts of the state may not entertain any suit or action challenging the validity of any Rule of this Court. Such a suit would be in the nature of a bill of review or to impeach a judgment of this Court, and, in effect, would constitute an appeal to the chancery court from the action of this Court. Such a proceeding is unknown to the law.

This is not to say, however, that there can be no relief from a Rule of this Court deemed to be arbitrary, illegal or improvident.

This Court welcomes the continuing criticisms of its Rules. They never become final, and are always subject to change. We solicit advice and suggestions from the Bench and Bar for their improvement. When any individual deems any Rule of Court to be objectionable from any standpoint, it is his privilege to petition the Court for its elimination or modification. Indeed, it is the duty of the solicitors at the Bar of this Court to make suggestions and recommendations on the orderly administration of the appellate judicial process.

### IV.

We would be false to our duty and recreant to our trust as the people's highest tribunal if we were to permit this suit to stand.

Accordingly, we order and direct the Chancery Court at Chattanooga to enter instanter an order of dismissal, taxing all accrued costs to the parties plaintiff. A certified copy of the order so entered will be forwarded to the Clerk of this Court at Nashville.

However, in order that the parties may have their insistences considered, we direct that all pleadings in this cause be delivered to the Clerk of this Court at Nashville forthwith. This Court will treat the pleadings as constituting a motion to vacate or modify Rule 42.

This matter will be docketed for oral argument, in Knoxville, at the heel of the calendar on 7 May 1976. Briefs will be filed with the Clerk in Nashville by 23 April 1976. The sole issue before the Court is the constitutionality of Rule 42.

COOPER, HENRY, BROCK and HARBISON, JJ., concurring.