IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 24, 2013 Session

**STATE OF TENNESSEE v. ALLAN POPE**

**Appeal from the Criminal Court for Sullivan County**
**No. S58286, S58287      R. Jerry Beck, Judge**

_____

**No. E2013-01045-CCA-R3-CD - Filed December 16, 2013**

_____

A Sullivan County jury convicted the Defendant, Allan Pope, of one count of using public equipment for private purposes, one count of official misconduct, and one count of theft of services over $10,000 but less than $60,000. On direct appeal, this Court affirmed the Defendant's conviction for theft of services and reversed and dismissed the Defendant's convictions for official misconduct and private use of public property. *State v. Pope*, No. E2011-01410-CCA-R3-CD, 2012 WL 4760724, at *1 (Tenn. Crim. App., at Knoxville, Oct. 5, 2012), *perm. app. denied* (Tenn. March 5, 2013). On remand, the Defendant filed a motion for reconsideration, requesting that the trial court reconsider its previous denial of the Defendant's request for judicial diversion; the trial court denied the motion. On appeal, the Defendant contends that the trial court erred when it denied his motion. After a thorough review of the record and applicable law, we dismiss the Defendant's appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Dan R. Smith (on appeal ), Jonesborough, Tennessee, and Ricky A. W. Curtis (at trial), Blountville, Tennessee, for the appellant, Allan Pope.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; H. Greeley Wells, Jr., District Attorney General; and Barry P. Staubus, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

1

## A. Trial

On direct appeal, our Court summarized the underlying facts of the case as follows:

Special Agent Brian Pritchard with the Tennessee Bureau of Investigation ("TBI") testified first for the State. He stated that the District Attorney General for Sullivan County contacted him in March of 2010 and requested that he initiate an investigation into various activities of the Sullivan County Highway Department. The district attorney specifically requested an investigation into the digging of a ditch on Graybeal Road in the Bluff City area of Sullivan County. Agent Pritchard also investigated work that the highway department performed on Hawley Road, on two areas of Rice Cross Road, and on Muddy Creek Road, all in Sullivan County.

During the course of his investigation, Agent Pritchard spoke with "dozens" of individuals. He also fielded various anonymous complaints against the highway department. He reviewed financial disclosure forms and learned that none of the property owners involved had donated money to appellant's campaign. However, Agent Pritchard believed that information to be "outside the scope" of and not pertinent to his investigation. Although Agent Pritchard reviewed the records at the election commission office, he did not ask the property owners if they had contributed less than $100 to appellant's campaign fund, which would not require reporting.

On cross-examination, Agent Pritchard admitted that he did not personally view any of the properties in question before any work began. He relied on the "before" and "after" pictures provided to him by James "Jim" Montgomery at the highway department. He acknowledged that variations in the camera angle could cause pictures to appear different even though they are the same image.

As part of his investigation, Agent Pritchard formulated estimates of the work performed at each location. According to Agent Pritchard, the highway department kept limited files pertaining to projects. To gather the information necessary to assemble an estimate, he interviewed people who actually worked on the jobs, along with their supervisors.

Michael Joe Cunningham testified that he was a salesman at Stowers Equipment Rentals. Stowers had previously provided rental equipment for

2

the county highway department at a negotiable rate. The State introduced a list of rental rates for 2007–2008 through Mr. Cunningham.

The State tendered Larry Bailey, the Director of Accounts and Budgets for Sullivan County, as an expert in state and county auditing procedures and the trial court allowed him to testify in that regard. He testified that the Tennessee County Uniform Highway Law was enacted by the legislature in an attempt to regulate the duties, responsibilities, procedures, and salary range for county highway department personnel. The statute refers to the "chief administrative officer" of the department, the title held by appellant. The highway commissioner does not have the authority to perform work on private property except for bus or postal route turn-arounds. The commissioner can perform work for other jurisdictions, but the work is subject to county commission approval and reimbursement by the recipient city or county. The Sullivan County Commission never approved a resolution for the Sullivan County Highway Department to perform work for Bluff City.

Mr. Bailey's department was also responsible for payroll for county government employees and for paying bills incurred by the county. His office paid a bill in the amount of $3,525 to Stowers Equipment Rental and Supply for rental of a bulldozer in November 2006. The bill was incurred during the project at Muddy Creek Road. Mr. Bailey stated that when an auditor reviewed county records, the auditor would ensure that the bills or invoices were signed by the proper individuals and that the paperwork was in order. Unless someone reported that a particular item was used in an improper fashion, auditors would not have the "field" experience to notice an improper purchase or allocation. The auditors only confirmed that the office implemented proper controls. If an auditor found an impropriety in the records of a county department, the auditor completed an audit report and directed it to the district attorney general of the county. In conducting the Sullivan County audit in 2007, Mr. Bailey found no improprieties.

Mr. Bailey confirmed that appellant had the authority to act upon Sullivan County property or property over which the county exercised a right-of-way. Appellant also had the authority to remove obstructions along the rights-of-way. Mr. Bailey was not certain about the highway supervisor's discretion to remove obstructions on private property outside of the exceptions he noted. He testified that the statutory provision that addresses misuse of property or funds provides that the supervisor should be immediately discharged in the event of proof of improprieties.

3

Gary Wayne Medlin, a lieutenant with the Sullivan County Sheriff's Office, reviewed dispatch records from the sheriff's department from January 1, 2003, through December 31, 2007, at the State's request. He specifically focused on five locations: from 1000 to 1100 Hawley Road; 964 Rice Cross Road; 1200 Rice Cross Road; the intersection of Muddy Creek Road and Hawley Road; and the intersection of Muddy Creek Road and Brown Circle. The only incidents he located were at the two intersections joining Muddy Creek Road. He reported five dispatches to the Muddy Creek Road/Hawley Road intersection and six dispatches to the Muddy Creek Road/Brown Circle intersection. None of the traffic accidents were attributed to sight distance problems, with the exception of one. One incident at Muddy Creek Road and Brown Circle was reportedly caused by the sun setting in the driver's eyes. The records reflected a single-car accident resulting in a roll-over prior to the date the work was completed on the slope, but no single-car accidents had been reported after the work was finished. Lieutenant Medlin's information did not contain details of how many "close calls" may have occurred at the locations or how many complaints the department may have received about the lack of safety at the locations.

Jim Montgomery testified that he had been employed by the Sullivan County Highway Department for thirty-one years. He was the surveyor for the highway department and assisted with the department's budget and finances. He had an assistant named Mike Betley. Before appellant began his tenure as highway commissioner, David Campbell was a roller operator on the county's paving crew. Appellant promoted Mr. Campbell to section foreman. The county was divided into four sections with a section foreman assigned to each one. Mickey Nottingham was a construction foreman. He would perform certain jobs at the request of section foremen or the county road supervisor. After appellant took office, Mr. Montgomery started keeping duplicate copies of certain files in his office.

When a project involved operating beyond the county's right-of-way, the highway department would obtain an easement from the property owner. Mr. Montgomery prepared the easements prior to appellant's taking office. The department secretary, Peggy Campbell, wife of David Campbell, wrote most of the easements from that point forward. She was not employed by the highway department until appellant began his tenure.

Appellant testified at trial. He became the highway commissioner in 2006. Pursuant to the Tennessee County Uniform Highway law, highway

commissioners must be qualified before they can run for the office. His background included construction, civil engineering, and construction engineering. Appellant thought that he would be working in the field, surveying land and designing. He did not realize that the position would entail more management than anything else.

The highway department had 141 employees when appellant took office. The county was subdivided into four sections, with a foreman assigned to each section. The foremen assigned by appellant were John Salyers, David Campbell, Scotty Murray, and Terry Schaffer. The highway department was responsible for all county roads, bridges, rights-of-way, and utility rights-of-way. The department was also responsible for safety, which entailed maintaining traffic signals, mowing, ditching, and shouldering (to prevent hydroplaning). It paved roads and installed road signs, as well.

When appellant took office, he immediately demoted all of the previous foremen and promoted his own men, including David Campbell, to the positions. He also hired Peggy Campbell, Mr. Campbell's wife, as the department secretary.

In deciding whether to correct the various sight distance problems, appellant did not contact the sheriff's office to ascertain whether their records reflected complaints or traffic accidents. As chief administrative officer of the highway department, appellant felt that it was within his discretion to perform the work. He stated that if he, in his judgment, thought it was necessary, then it was necessary.

J. Rodney Carmical was the executive director of the Tennessee Highway Officials Association. In that capacity, he worked for the elected and appointed road superintendents. He provided technical assistance and training opportunities; monitored pertinent state and federal legislation; attended meetings; circulated a newsletter; and monitored the General Assembly.

Mr. Carmical was familiar with the highway department laws. The procurement of easements over private property is covered by the Tennessee statutes. The reasons for obtaining an easement are: (1) to gain control over the subject property; (2) to work on "county" rather than "private" property; and (3) and to insulate the department from liability. Because the highway department cannot perform work on private property, it is allowed to obtain easements so that it can make problems on private

property safe for citizens. Further, the highway department has total control over line of sight problems, including sloping banks and cutting brush to enable better sight clearance.

Agent Pritchard testified first regarding the ditch on Graybeal Road that appellant authorized his crew to dig. Graybeal Road is a cul-de-sac with three houses located at the end of it. Those houses are serviced by a private water line that runs to the main line supplied by Bluff City. Agent Pritchard photographed the ditch while it was in the process of being dug and after it had been filled in and graded. He did not notice any indication of an eighteen-inch drainage ditch being created along the road. The ditch he witnessed appeared to be much deeper than that. Agent Pritchard photographed a pick-up truck, owned by Joe Wilkinson, with PVC pipe on a trailer behind it. Agent Pritchard prepared his own cost estimate of the work performed on Graybeal Road, factoring in the salary rates of county employees, the hours spent on the job, and the cost of the equipment. He estimated that the project cost Sullivan County $4,550.54.

Joe Wilkinson, a grading contractor from Bluff City, testified that someone contacted him on behalf of Reed Booher and requested that he bid on a project to install a water line off of Graybeal Road where Mr. Booher was developing land. Mr. Wilkinson believed the person who contacted him was Bud Davies, the surveyor. Mr. Wilkinson submitted a bid for the water line from the start of Graybeal Road to the back of it around October or November of 2009. The proposal of $2 per foot of water line involved Mr. Booher purchasing all of the parts and Mr. Wilkinson digging and installing the line. Mr. Wilkinson went to the area in February or March of 2010 because Bluff City was installing a line under the road to a main line. At that time, he noticed a couple of county trucks, an excavator, and a road grader. He saw an open ditch of approximately 1,000 feet long, as well. Mr. Wilkinson and Mr. Booher reached an agreement around the first of March, 2010, for Mr. Wilkinson to proceed with installing the two-inch water line. Mr. Booher paid for the pipe, and Mr. Wilkinson picked it up in Blountville. He traveled to the location with the pipe on a Friday morning. When he arrived, the ditch had been completely covered and graded back as though it had never existed. Mr. Wilkinson had to re-dig the trench so he could install the water line. He installed six-inch pipe instead of two-inch pipe, which raised the price from $2 to $3 per foot. He installed close to 2,000 feet of water line. During this time, Mr. Wilkinson never had a conversation with anyone from the city of Bluff City.

Anthony Todd Malone was the mayor of Bluff City in March 2010.

6

He also performed the duties of city manager for a period of time. As city manager, he directed the daily activities of the city government, including supervision of personnel. As mayor, he attended meetings with the aldermen to discuss city resolutions and ordinances. Bud Davies, a surveyor, approached Mr. Malone, in his capacity as mayor, in October or November, 2008, with a request that Bluff City install a water line and supply water to a planned housing development for approximately sixteen houses on Graybeal Road. Mr. Davies made the request on behalf of the property owner, Reed Booher. Mr. Davies stated that if Bluff City would supply the pipe, install the pipe, and supply the water, the Sullivan County Highway Department would open and close the ditch. In March of 2010, the city board decided that Bluff City would supply the water after the developer installed the water lines. Mr. Malone never had direct contact with anyone from the Sullivan County Highway Department.

Mayor Malone testified that on any occasion Bluff City and Sullivan County collaborated on a project in Bluff City, the two entities entered into an agreement. He spoke with appellant once during a previous transaction but not during the proposed digging of the ditch on Graybeal Road.

William John McKamey testified that he was a Sullivan County commissioner in January of 2010. That month, he, Don Weaver, appellant, and David Campbell met over lunch. Don Weaver was the city manager of Bluff City. David Campbell was the section foreman for the Bluff City area. The purpose of the meeting was to negotiate the sale of road salt to Bluff City by Sullivan County. Bluff City ran out of salt that winter due to large amounts of snow. They did not discuss the water line project on Graybeal Road.

Frederick "Don" Weaver was the city manager for Bluff City at the time of appellant's trial. He began his employment in December 2009. In his capacity as city manager, Mr. Weaver attended the January 2010 lunch meeting regarding the purchase of road salt from Sullivan County. He never had a conversation with anyone from Sullivan County about digging the ditch on Graybeal Road.

James Allen Carr was employed by the Sullivan County Highway Department. He was a track hoe operator. Appellant and David Campbell instructed him to go to the Graybeal Road area and dig a ditch. The purpose of the ditch was for a water line. Aside from the Graybeal Road project, Mr. Carr had never been asked to dig a water line ditch during his thirty-six years of employment with the highway department. He had,

however, dug several drainage ditches. The request caused him some concern. Mr. Carr explained to appellant and Mr. Campbell that he did not think they should dig the water line ditch until Sullivan County obtained more information about the project. Appellant told Mr. Carr that Bluff City was going to install the water line. Mr. Carr dug the ditch as instructed, but no one installed the water pipe. The ditch was three feet wide, three feet deep, and three to four hundred feet long. Mr. Carr believed that it would serve the dual purpose of containing water pipe and providing drainage. The Friday morning after Mr. Carr completed digging, Mr. Campbell instructed him to fill the ditch at appellant's request because the water line was not going to be installed. Eddy Murray was present during the filling of the ditch to flag vehicles for safety; however, Mr. Murray was not present during the digging of the ditch. No one watched Mr. Carr dig the ditch, but several people watched him cover it back up.

Agent Pritchard testified that he arrested appellant on July 21, 2010. After Agent Pritchard informed him of his Miranda rights, appellant agreed to speak with him. Appellant gave a statement in which he told Agent Pritchard that during the process of widening Graybeal Road, he was "pretty sure" that Reed Booher talked to David Campbell. Mr. Campbell indicated to appellant that he knew Mr. Booher. Appellant, Mr. Campbell, and Mr. Booher met to discuss widening the entrance of Graybeal Road. Appellant advised Mr. Booher that the county could perform the work if it had the right-of-way. Appellant and Jim Montgomery checked the file on Graybeal Road and confirmed that the county had a fifty-foot right-of-way. Mr. Montgomery marked the right-of-way with stakes and they began the process of widening the road.

In his statement, appellant further said that on another occasion, he met Mr. Booher on Graybeal Road and asked if Mr. Booher had contacted Bluff City; Mr. Booher responded in the affirmative. Believing that Bluff City would want to install a new water line at approximately the same time Sullivan County finished paving the road, appellant suggested that Mr. Booher communicate to Bluff City that Sullivan County would dig the ditch for the water line if Bluff City would provide the labor and materials for the line. At that time, appellant asked Mr. Booher for a right-of-way for a cul-de-sac at the end of the road, to which Mr. Booher agreed.

Appellant further stated to Agent Pritchard that he heard nothing more of the project until January 2010, when Commissioner John McKamey called David Campbell and asked to have lunch with Mr. Campbell and appellant. Don Weaver from Bluff City was also to attend.

8

During the lunch at the Ridgewood restaurant, appellant told Don Weaver about possibly digging the water line ditch on Graybeal Road in the near future. Appellant told Mr. Weaver that it would save Bluff City a great deal of money. Mr. Weaver stated that Bluff City appreciated all of the support that it received from the Sullivan County Highway Department. Appellant believed that at the time of the lunch meeting, Bluff City had already decided to forgo the project on Graybeal Road and that the meeting would have been the appropriate time for Mr. Weaver to inform him accordingly. In March, 2010, after digging a portion of the water line ditch, Sullivan County Highway Department learned that Bluff City was not going to participate in the project. Mr. Booher was going to hire a private contractor to install the water line. Appellant advised Mr. Campbell to fill in the ditch. Leaving an open ditch over a weekend violated the Occupational Health and Safety Act (OSHA) [sic] standards.

Mr. Montgomery testified with regard to the work the highway department performed on Graybeal Road. He stated that the Graybeal Road project was divided into two segments. The first segment involved widening the road and creating a cul-de-sac at the end of the road. The second part of the project involved digging the water line ditch. Mr. Montgomery was familiar with the first segment of the project but was out of town when workers were digging the ditch. He was familiar with the proposal regarding the water line ditch because he was present when Bud Davies, a private surveyor working with Reed Booher, came into the highway department office and asked if Sullivan County would dig the water line ditch if Bluff City agreed to install the water line.

Mr. Montgomery and appellant were in Murfreesboro, Tennessee, for a conference when appellant received a telephone call from David Campbell about the water line. Appellant advised Mr. Campbell to proceed with the project. Later, Mr. Montgomery learned that the property owner was going to hire a private contractor to install the water line. Mr. Montgomery's only involvement in digging the water line ditch was advising appellant that he should obtain approval by the Sullivan County Commission before entering into an agreement with another governmental entity. According to Mr. Montgomery, appellant did not treat the Graybeal Road project any differently than he had any other project. Appellant did not attempt to or request Mr. Montgomery to hide the specific costs of the project and did not advise Mr. Montgomery to keep the details of the project quiet.

Appellant testified at trial that in 2010 he authorized the project at

9

Graybeal Road. The county had a right-of-way, and the road was very narrow. Beside the road, three water lines ran at a depth of approximately one foot. The county workers kept breaking the lines with the lawn mowers and having to patch them. Appellant was on site inspecting the shallow water lines. He later spoke with Reed Booher about widening the road. Appellant said that the county would widen the road if it had a right-of-way. Jim Montgomery confirmed that the county had a right-of-way at that location, so the county widened the road.

While the crew was widening Graybeal Road, appellant saw Reed Booher on site. Seeing Mr. Booher led appellant to think that Bluff City would likely be installing new water lines [in] the area. He had worked with Bluff City two times previously. Bluff City visited the area to perform a water tap. Appellant expected that the water lines would be installed next. Based on his experience with Bluff City, appellant authorized his department to dig the water line ditch.

Appellant testified that he was in Murfreesboro when he learned that Bluff City would not be installing the water line. He instructed Mr. Campbell to close the ditch. The Occupational Health and Safety Administration (OHSA) prohibited a open ditch from being left unattended over a weekend. In offering to dig the water line ditch, appellant did not receive any favors or benefit from Mr. Booher. He did not know Mr. Booher prior to this project.

Appellant further testified that he did not think that he needed county commission permission to dig a utility ditch for another municipality if it was located on the county's right-of-way. He felt that he, as commissioner, exercised absolute authority over the rights-of-way. In fact, utilities would have to seek his permission before the company could do work on the county right-of-way. During the pendency of the project, no one from Bluff City ever told him that it would not install the water lines. Appellant further believed that the statute authorizing the department to perform work for another municipality did not specify whether the county commission must give prior approval or whether subsequent approval was sufficient.

*Pope*, 2012 WL 4760724, at *1-8. We have omitted additional facts relating to charges of which the Defendant was acquitted.

After hearing the evidence, a Sullivan County jury convicted the Defendant of one count of using public equipment for private purposes, one count of official misconduct,

and one count of theft of services more than $10,000 but less than $60,000. On direct appeal, the Defendant contended that 1) the trial court had erred in denying his motion for judgment of acquittal or motion for new trial; 2) the evidence was insufficient to sustain his convictions; and 3) the trial court erred in ordering restitution. Holding that the jury did not have sufficient evidence from which it could have convicted the Defendant, this Court reversed the Defendant's convictions for official misconduct and private use of public property. *Pope*, 2012 WL 4760724, at *16-17. The remaining conviction and six-year probation sentence for theft of services was affirmed and the case remanded to the trial court "for entry of judgments consistent with this opinion." *Id.* at *18.

Thereafter, the Defendant filed a Motion for Reconsideration at the trial court level, requesting that the trial court reconsider him as a candidate for judicial diversion in light of this court's reversal of two of the three convictions. The trial court denied the motion, stating that it had previously denied the request for judicial diversion on the basis that the Defendant had violated public trust; the trial court found that this "factor" outweighed all factors in favor of judicial diversion. The trial court further held that it was "without jurisdiction to set aside the prior order of this Court."

It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant argues that the trial court erred as a matter of law when it concluded that it had no jurisdiction to reconsider his request for judicial diversion on remand. The State argues that his appeal should be dismissed because this Court lacks jurisdiction, as Tennessee Rule of Appellate Procedure 3(b) does not authorize an appeal as of right from an order denying reconsideration of judicial diversion on remand. We agree with the State's contention that this case is not properly before us pursuant to Tennessee Rule of Appellate Procedure 3(b).

Tennessee Rule of Appellate Procedure 3(b) governs the circumstances in which a defendant in a criminal action has an appeal as of right. Rule 3(b) reads:

> In criminal actions an appeal as of right by a defendant lies from an judgment of conviction entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals: (1) on a plea of not guilty; and (2) on a plea of guilty or nolo contendere, [if certain specified circumstances exist]. The defendant may also appeal as of right from an order denying or revoking probation, an order or judgment entered pursuant

to Rule 36, Tennessee Rule of Criminal Procedure, and from a final judgment in a criminal contempt, habeas corpus, extradition, or post-conviction proceeding.

Tenn. R. App. P. 3(b) (2012). The judgment at issue is not "a judgment of conviction, . . . an order denying or revoking probation, an order or judgment entered pursuant to Rule 36, Tennessee Rule of Criminal Procedure, [or] a final judgment in a criminal contempt, habeas corpus, extradition, or post-conviction proceeding." *Id.* Thus, the trial court's judgment denying the Defendant's request to reconsider his judicial diversion is not covered by Rule 3, and the Defendant does not have an appeal as of right. *See Jonathan Malcolm Malone v. State*, No. M2004-02826-CCA-R3-CO, 2005 WL 1330792, at *1-2 (Tenn. Crim. App., at Nashville, June 6, 2005), *no Tenn. R. App. P. 11 application filed*; *State v. Greg Smith*, No. E2003-01092-CCA-R3-CD, 2004 WL 305805 (Tenn. Crim. App., at Knoxville, Feb. 18, 2004), *no Tenn. R. App. P. 11 application filed*.

Assuming, *arguendo*, that the Defendant was entitled to an appeal, he would still not be entitled to the relief that he seeks. In our view, the remand this Court ordered in *Pope,* 2012 WL 4760724, at *18, was a specific remand for the dismissal of the two convictions that were reversed. It was not a remand for the trial judge to take up the matter of the Defendant's sentence for a second time. On remand, trial courts are strictly bound by the instructions of the appellate court, and must "abide the orders, decrees, and precedents of higher courts." *State v. Irick*, 906 S.W.2d 440, 443 (Tenn. 1995) (quoting *Barger v. Brock*, 535 S.W.2d 337, 341 (Tenn. 1976)). This Court specifically ordered that the remand was "for entry of judgments consistent with this opinion." In our view, the only necessity for the remand was the entry by the trial court of judgments dismissing the two charges that this Court had determined were not sustained by sufficient evidence. Thus, pursuant to the remand, the trial court had only the authority to enter the judgments of dismissal. Accordingly, the Defendant's argument that the trial court had jurisdiction to reconsider his sentence is without merit. The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the Defendant's appeal is not properly before this court pursuant to Tennessee Rule of Appellate Procedure 3(b). Accordingly, the Defendant's appeal is dismissed.

_____
ROBERT W. WEDEMEYER, JUDGE