IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 1, 2019

# IN RE BRIANNA B., ET AL.[1]

**Appeal from the Chancery Court for Maury County**
No. A-041-16          Stella L. Hargrove, Judge

_____

## No. M2019-00446-COA-R3-PT

_____

This is the second appeal in a case in which the mother of two children appeals the termination of her parental rights to the children. In the first appeal, this Court vacated the trial court's holdings with respect to the grounds for termination and the determination that termination of the mother's rights was in the children's best interest; we remanded the case for the court to make additional factual findings and conclusions of law. On remand, the trial court considered the record and its previous order and entered an order in which it declined to make additional findings, and held "that its ruling is correct and is more than sufficient to find by clear and convincing evidence, that one or more statutory grounds for termination exist, and further, that termination is in the best interest of Lizzie, the remaining minor child." Upon consideration of the record, we vacate the order entered following the remand from the prior appeal and remand the case for entry of an order that makes the factual findings and conclusions of law previously ordered by this Court.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ARNOLD B. GOLDIN, J., joined.

Brandon E. White, Columbia, Tennessee, for the appellant, Debra H.

L. Samuel Patterson, Columbia, Tennessee, for the appellees, Michael B. and Jacqualin B.

---

[1] This Court has a policy of protecting the identity of childre4n by initializing the last names of the parties.

# MEMORANDUM OPINION[2]

This case comes before us for the second time; the salient facts were set forth in the prior opinion:

> The Children at issue, Brianna and Elizabeth, were born of the marriage between Debra H. ("Mother") and Michael B. ("Father") in January 2001 and August 2006, respectively. Mother and Father (collectively "the Parents") later divorced, and Father was designated as the primary residential parent pursuant to an agreed parenting plan. Pursuant to the parenting plan, dated March 22, 2012, Mother was not required to remit child support and was awarded co-parenting time every other weekend from Thursday through Sunday.
>
> Father married Jacqualin B. ("Stepmother") (collectively "the Petitioners") in October 2012, and the Children have resided with them since that time. The record reflects that the Parties did not adhere to the parenting plan and that Mother exercised co-parenting time on an occasional basis. Neither party filed a petition to modify the parenting plan. Instead, Petitioners filed a petition to terminate Mother's parental rights on October 21, 2016, based upon the statutory grounds of abandonment for failure to support and to visit, wanton disregard for the children's welfare, and failure to manifest an ability and willingness to assume responsibility for the Children.
>
> Mother objected and moved for visitation with the Children. On June 26, 2017, the court granted visitation in accordance with the terms provided in the existing parenting plan, pending the final hearing on the termination petition. Petitioners then filed a motion to end Mother's visitation on August 15, alleging that visitation was not in the best interest of the Children. Petitioners claimed that Brianna refused to visit and that Mother discussed the facts of the case with Elizabeth, causing the child additional stress and anxiety. Following a hearing on August 30, the court suspended Mother's visitation based upon the living conditions at the residence and

---

[2] Rule 10 of the Rules of the Court of Appeals states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Brianna's refusal to visit. The court advised Mother to file a renewed motion once her living conditions improved.

The case proceeded to a hearing on the termination petition on October 30, 2017, and concluded on October 31. …

Following the hearing, the trial court granted the termination petition, sustaining each ground but abandonment based upon wanton disregard and finding that termination was in the best interest of the Children. The court specifically found that Mother was not a credible witness.

*In re Brianna B.*, No. M2017-02436-COA-R3-PT, 2018 WL 6719851, at *1, *6 (Tenn. Ct. App. Dec. 19, 2018) ("*Brianna I*").

In the order terminating Mother's rights which was appealed in *Brianna I*, the trial court made the following factual findings relating to the ground of abandonment by failure to support:

> Upon entry in March of 2012, the Permanent Parenting Plan did not require [Mother] to pay child support. [Father] did not pursue court ordered support. Without receipts, the Court cannot accept [Mother]'s testimony of providing school supplies and clothing for the children as truthful. Also, [Mother]'s testimony concerning medical insurance for the children is not credible.

> ***

> When Mr. G[.] was in jail or in the penitentiary, [Mother] showed some interest in her children. She always had the money to post bail for Mr. G[.] and to buy cigarettes; yet, she showed no interest in helping to support her children. When Mr. G[.] is not incarcerated, [Mother] is financially dependent on him. She maintains she has to care for Edward and Brenda full time; however, Mr. G[.] and she are living in a separate mobile home, using a baby monitor to monitor their care. [Mother] testified she is now willing to get a full-time job and pay child support.

> There is no evidence in this record of [Mother] ever being physically unable to work. She testified she did not have surgery for her alleged carpal tunnel injuries. She simply chooses not work. [Mother] knows that her children are cared for by [Father and Stepmother]. She has never helped with their support. This is not a case where a parent turns down support from the other parent. [Mother] never offered any support to be turned down.

3

\*\*\*

The Court finds [Mother]'s failure to visit and support her children to be willful, in that she was aware of her duty to support and visit with them; she had the capacity to do so; she made no attempt to do so, and she has no justifiable excuse for not doing so.

The court made these findings as to abandonment by failure to visit:

[Mother]'s position in regard to initiating phone calls from the children is not supported by the record. The Court finds that Brianna's testimony is very accurate in describing her mother's lack of interest and lack of involvement in the children lives: "Drugs, alcohol and bars were more important than family; her main focus is her phone — phone time for her and we were there — we were company; she's always depending on some man; she's not really interested in us."

\*\*\*

The Court finds this is a classic case of willful abandonment by token visitation. . . .  This record is devoid of any interference with [Mother]'s token attempts to see her children. This ground, alone, is more than sufficient to terminate her parental rights.

The Court finds [Mother]'s failure to visit and support her children to be willful, in that she was aware of her duty to support and visit with them; she had the capacity to do so; she made no attempt to do so, and she has no justifiable excuse for not doing so.

With respect to the ground of failure to manifest the ability and willingness to assume custody of the children, the court found:

The record reflects that these children have never been a primary focus in [Mother]'s life. She plays the role of mother only when it is convenient for her. She gives short notice wanting to see the children, with no regard for the children's school schedules, work schedules or family schedules and commitments. The Court finds [Mother] 100% selfishly motivated.

[Mother] is not interested in the children's schooling, extracurricular activities, and Brianna's job. She asked about sending lunch money for Lizzie. Lunches had been provided by the school for two years.

4

[Mother] has never shown any interest in assuming legal and physical custody of these children. Her lifestyle leaves no room for raising children. [Mother]'s primary focus is Mr. G[.], the man on whom she is totally financially dependent. It is clear to the Court that [Mother] has never wanted custody of her children.

In *Brianna I*, this Court vacated the holding that Mother abandoned the children by her failure to visit and remanded for consideration of "Mother's willfulness in light of Father's denial of visitation and the Parties' course of dealing in scheduling visitation since the time of the divorce." *Id.* at *7. We also vacated the court's holding that Mother abandoned the children by her failure to support them and remanded for consideration of Mother's willfulness in light of the provision in the parenting plan that excused Mother from paying support. *Id.* We also vacated the holding pursuant to Tennessee Code Annotated section 36-1-113(g)(14) that Mother had failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the children and that placing them in her legal and physical custody would post a risk of substantial harm to their physical or psychological welfare. We remanded the case for the court to make additional findings of fact and conclusions of law relative to this ground because "the court failed to issue any findings of fact or conclusions of law concerning whether placing the Children in Mother's care would pose a risk of substantial harm to their physical or psychological welfare." *Id.* at *7.

With respect to the trial court's best interest determination, this Court held:

This case offers a unique situation in light of the agreed upon parenting plan and the Children's ages at the time of the hearing. While Mother's involvement with the Children was sporadic and inconsistent with the terms of the parenting plan, Elizabeth evidenced a bond with her mother and a desire to maintain that relationship. Brianna understandably did not evidence such a bond and indicated her desire to end the relationship. However, Brianna will attain the age of majority in January 2019, likely before the trial court's ruling upon remand is even final. Mother has also taken steps to improve her life and make room for the Children and evidenced her improvement by maintaining regular visitation with Elizabeth when permitted by the court. With all of the above considerations in mind, we also vacate the court's best interest finding and remand for additional findings of fact and conclusions of law on this issue in light of the Children's respective ages and varying levels of attachment to Mother.

*Id.* at *9.

5

On December 20, 2018, the day after our opinion in was issued in *Brianna I*, Mother filed a renewed motion for visitation. The trial court held a hearing on January 28 at which Mother and Father testified. It appears that, in the course of the hearing the court requested that the parties inform the court as to whether they desired to put on additional proof or wanted the Court to make the additional findings of fact and conclusions of law based on the existing record. Mother notified the court by letter, which is included in the Technical Record in this appeal, that she requested that the court rely on the existing record.

On February 5, the trial court entered an order denying Mother's request for visitation, and on February 13, entered another order that stated in part:

> The Court has reviewed the record and states that there are no additional findings of fact or conclusions of law to justify the termination of Respondent's parental rights.
>
> The Court maintains that its ruling is correct and is more than sufficient to find by clear and convincing evidence, that one or more statutory grounds for termination exist, and further, that termination is in the best interest of Lizzie, the remaining minor child.

After the mandate was issued from this Court, the trial court entered an Amended Order on March 1, containing the same language immediately quoted above; that order did not address the motion for visitation.

Mother appeals, contending that the court erred when it declined to make additional findings of fact and conclusions of law. Mother urges us to reverse and vacate the trial court's order of termination and to remand the case with instructions that it be assigned to a different trial judge for purposes of determining Mother's visitation schedule. For the reasons set forth below, we have determined that the order entered following the remand does not comply with our instructions in *Brianna I* and, accordingly, the judgment must be vacated and the case remanded.

Our consideration of this appeal is informed by the analysis from *Rudd v. Rudd*:

> This Court has held that "inferior courts must abide the orders, decrees and precedents of higher courts." *Weston v. State,* 60 S.W.3d 57, 59 (Tenn. 2001) (citing *State v. Irick,* 906 S.W.2d 440, 443 (Tenn. 1995); *Barger v. Brock,* 535 S.W.2d 337, 341 (Tenn. 1976)). When a trial court receives a case that has been remanded, the trial court must strictly comply with the appellate court's mandate, and typically lacks the power to deviate from the terms of the appellate court's mandate, absent either permission from the appellate court or extraordinary circumstances. *Silvey v. Silvey,*

6

No. E2003-00586-COA-R3-CV, 2004 WL 508481, at *3; 2004 Tenn. App. LEXIS 167, at *8 (Tenn. Ct. App. Mar. 16, 2004).

*Rudd v. Rudd*, No. W2011-01007-COA-R3-CV, 2011 WL 6777030, at *7 (Tenn. Ct. App. Dec. 22, 2011).

For the reasons set forth in *Brianna I*, we disagree with the trial court's statement that its earlier ruling was "more than sufficient." The court's failure to comply with this court's order precludes our meaningful review of the willfulness of Mother's actions relative to the grounds of abandonment by failure to visit and to support.[3] We likewise have no trial court finding to review concerning whether placing Elizabeth in Mother's care would pose a risk of substantial harm to her physical or psychological welfare, as required to sustain the ground for termination found at Tennessee Code Annotated section 36-1-113(g)(14). The trial court's post-remand order also fails to address the best

---

[3] In *In re Audrey S.*, 182 S.W.3d 838, 863-864 (Tenn. Ct. App. 2005), this Court discussed willfulness in the context of termination cases:

> The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months. . . .
>
> In the statutes governing the termination of parental rights, "willfullness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.
>
> Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. Failure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty, . . . or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child. The parental duty of visitation is separate and distinct from the parental duty of support. Thus, attempts by others to frustrate or impede a parent's visitation do not provide justification for the parent's failure to support the child financially.
>
> The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

(Citations and footnotes omitted.)

7

interest findings "in light of the Children's respective ages and varying levels of attachment to Mother."[4]

For the foregoing reasons, we vacate the March 1 Amended Order and remand the case for entry of an order that complies with the opinion entered in *Brianna I*, which is the law of the case. We are mindful of the importance and deference given to the trial court's determinations of the facts and the credibility of parties and witnesses, as well as the priority these cases are given in light of the nature of the rights at issue. In light of those considerations, we decline to order that the case be reassigned to a different judge on remand. If the trial court, however, determines that it is unable to comply with this opinion, the court is instructed to refer the case to the presiding judge of the 22nd Judicial District for reassignment.

RICHARD H. DINKINS, JUDGE

---

[4] While the case was pending on remand, Brianna reached the age of majority; thus, Mother's parental rights regarding her are no longer at issue. As contemplated in the remand order in *Brianna I*, further consideration of Elizabeth's best interests is warranted.