FILED
06/07/2018
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 18, 2018 Session

## STATE OF TENNESSEE v. BOBBIE SUE MADDLE

**Appeal from the Criminal Court for Putnam County**
**No. 2016-CR-89B          Gary S. McKenzie, Judge**

_____

### No. M2017-01707-CCA-R3-CD
_____

The Defendant, Bobbie Sue Maddle, pleaded guilty to five counts of sale of less than .5 grams of methamphetamine, a Class C felony, and two counts of sale of more than .5 grams of methamphetamine, a Class B felony. The trial court imposed an effective fifteen-year sentence. On appeal, the Defendant contends that the trial court abused its discretion when it enhanced her sentences and when it denied her request for a sentence of split confinement with Community Corrections. The Defendant also contends that current sentencing law effectively denied appellate review on these issues. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Brent Horst, Nashville, Tennessee (at hearing); Craig P. Fickling, District Public Defender and Benjamin D. Marsee, Assistant Public Defender (on appeal), for the appellant, Bobbie Sue Maddle.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Bryant C. Dunaway, District Attorney General; and Bret T. Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Facts

This case arises from the Defendant selling methamphetamine to an undercover

agent. For this offense, a Putnam County grand jury charged the Defendant with five counts of sale of less than .5 grams of methamphetamine and two counts of sale of more than .5 grams of methamphetamine.

The Defendant elected to plead guilty to the charges as a Range II offender with the trial court to determine her sentence and the agreement that her sentences would be run concurrently. The guilty plea transcript is not included in the record, so the following summary of the facts is taken from the presentence report:

On 02/24/15, agents of the Drug Task Force conducted an undercover drug purchase using a confidential source and confidential funds. Half a gram of methamphetamine was purchased for $50.00 from [the Defendant.]

On 02/25/15, 03/25/15, 04/23/15, 05/12/15, and 05/19/15, agents of the Drug Task Force conducted undercover drug purchases with the use of a confidential source and confidential funds. During each transaction, one (1) gram of methamphetamine was purchased for $100.00 from [the Defendant].

On 5/21/15, Detective Chuck Johnson with the Putnam County Sheriff's Department, . . . executed a search warrant on the [Defendant's residence]. The search warrant was the result of an investigation from several tips indicating illegal manufacture and sale of methamphetamine which resulted in several controlled purchases of methamphetamine from [the Defendant]. A search of the home yielded the following: ground up ephedrine, red powder believed to be red phosphorus, zepherex pseudoephedrine 58 tables still in blister packs, crystal drain opener, one quart jar half full of unknown liquid, Kingsford lighter fluid 1/8 full, crystal heat drain opener 3/4 full, cold pack opened and 1/4 full, full bottle of drain opener, three (3) red containers containing a substance that field tested positive for methamphetamine, various unidentified pills, drug paraphernalia used for smoking methamphetamine, and $462.00 in cash, $80.00 of which was found to be confidential funds used in previous controlled methamphetamine purchases. [The Defendant] and Eddie Maddle were both charged with possession of Schedule II methamphetamine for resale and transported to the Putnam County Jail.

**B. Sentencing**

The following evidence was presented at the sentencing hearing: The State submitted the presentence report into the record as an exhibit; the State declined to

present other evidence. On behalf of the Defendant, Linda Loftis testified that she worked at a "sober living" facility in Putnam County as a drug and alcohol counselor. Ms. Loftis met with the Defendant while she was in jail and said that the Defendant was able to identify her long-term addiction to methamphetamine and issues with "co-dependency." Ms. Loftis acknowledged that the Defendant had never successfully completed a drug rehabilitation program. Ms. Loftis stated that an in-patient substance abuse treatment would be best for the Defendant, and stated that it was very beneficial that the Defendant had insurance that could presumably pay for such treatment. She testified that the Defendant's insurance would pay for treatment over a period of fourteen to twenty-eight days, following which she would enter "intensive out-patient" treatment, for a cumulative amount of sixty hours of treatment. With "reasonable progress," the Defendant could feasibly complete the treatment program in three months. Ms. Loftis recommended that the Defendant be ordered to live in a "sober living facility" where she would have access to a mental health component of treatment and allow her employment throughout the treatment.

The Defendant testified that she had an extensive criminal record including convictions for methamphetamine and other drug-related convictions. She acknowledged having served twenty-three months in incarceration; she continued to sell methamphetamine after her incarceration period. The Defendant acknowledged having participated in several drug rehabilitation programs. She acknowledged selling methamphetamine to support her own drug habit, including selling to family members, but she stated that she had been sober for several months at the time of the hearing.

On cross-examination, the Defendant agreed that all of her prior felonies were related to methamphetamine and that she had previously not complied with probationary sentences. She agreed that she had violated her probation twice. In the present case, the Defendant acknowledged selling methamphetamine to the confidential purchaser when her child was present. The Defendant agreed that she had been convicted of cooking methamphetamine in the past. She acknowledged using methamphetamine while out on bond in the present case.

At the conclusion of the hearing, the trial court summarized the evidence and stated that its decision would be made in consideration of the evidence, the arguments made by the parties, the principles of sentencing and the argument in favor of alternative sentencing, as well as any enhancement factors, the nature and characteristics of the Defendant's criminal conduct, the potential for rehabilitation, and statistics provided by the Administrative Office of the Courts used in the Risk Needs Assessment. The trial court stated that the Defendant was to be sentenced as a Range II offender. The trial court applied enhancement factor (1), that the Defendant "has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the

appropriate range," T.C.A. § 40-35-114(1) (2014), finding the following:

> The Defendant does have three prior felony offenses . . . [from 2002, 2008, and 2009]. There's an attempt to promote the manufacture of methamphetamine, that looks like it occurred in [2009]. There's [a 2008] conviction in the report for initiation of the process to manufacture methamphetamine. And also, the 2002 [offense] is an attempt to promote methamphetamine manufacture, number three. So, there are three . . . felonies.
>
> On top of that, the Defendant does have a criminal history that exceeds [those three felonies]. In 2013, [the Defendant was convicted of] simple possession . . . [as well as] criminal impersonation . . . in 2004, . . . misdemeanor theft [in 2000]. . . . So, I do place great weight on the criminal history, because [the Defendant has] an extensive criminal history.

The trial court also considered enhancement factor (2), that "the defendant is the leader in the commission of an offense involving two (2) or more criminal actors" and, based on the evidence presented that the Defendant's husband was involved in the offense, the trial court found that this factor applied but declined to place great weight on the factor. T.C.A. § 40-35-114(2).

The trial court next applied enhancement factor (8), that "[t]he defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community." T.C.A. § 40-35-114(8). The trial court found:

> [I]n the Presentence Report, we have a violation of probation in [2008], where [the Defendant's probation was revoked] to serve her five year sentence. It looks like, again, [the Defendant's probation was] revoked . . . to serve a two year sentence . . . in 2004 . . . and it looks like there [were] also revocations that have to do with failure to report.
>
> And so she does have a history of not being able to complete probation, as she has been placed on probation before and then violated for various reasons . . . .

The trial court considered and applied mitigating factor (8), that "the defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense," based on the Defendant's mental health issues, and set a fifteen-year sentence. T.C.A. § 40-35-113(8) (2014). Addressing the manner of service, the trial court found it necessary to protect society from the Defendant's long history of

4

criminal conduct by ordering her to serve her sentence in confinement. T.C.A. § 40-35-103(1)(A) (2014). The trial court also found that "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant," based on the Defendant's numerous probation violations and failures to comply with the terms of her probation. T.C.A. § 40-35-103(1)(C). The trial court stated:

> [W]hat do we do with individuals? If we can grant some type of treatment to them, and we can address that issue and get rid of it, then that's one thing. But I have to balance everything I do up here with protecting society. Because the problem that you have is that you've been through the system time and time again, and that culminates where you are, and that's why you land at fifteen years. The first time offender doesn't land at fifteen years. And once you have established that type of history inside the system, then the chances become even more and more narrow. . . .
>
> And also we have a cycle here, it concerns this Court that you've got your children that are involved in this same behavior. . . . . I agree with treatment, and I agree with rehabilitation. . . .
>
> But there has to be some personal responsibility here, and I'm going to give you [a] fifteen (15) year sentence. You're not a good candidate for Community Corrections, and it will be a fifteen (15) year sentence to serve.

It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court abused its discretion because it improperly enhanced the Defendant's sentence by placing undue weight on the Defendant's criminal history and prior record on probation. She further alleges that the trial court abused its discretion when it ordered her to serve her sentence, as opposed to order a sentence of split confinement with Community Corrections, because of its erroneous reliance on her prior probation performance. Lastly, the Defendant contends that the sentencing cases *Bise* and *Caudle* effectively eliminate appellate review of sentencing and thus should be overturned. The State responds that the trial court properly sentenced the Defendant within the applicable range and in consideration of the enhancement and mitigating factors. The State further responds that the trial court did not abuse its discretion when it declined to order an alternative sentence. As to the Defendant's argument that case law removes appellate review of sentencing, the State responds that the Defendant's argument is misplaced.

5

## A. Enhancement of the Defendant's Sentence

The Defendant contends that the trial court abused its discretion when it enhanced her sentence because it placed undue weight on her criminal record and prior performance on probation. The Defendant states that this is insufficient to justify enhancement. The State counters that the trial court carefully considered the enhancement factors, noting the Defendant's three prior felonies, one of which it used to enhance the Defendant's sentence, and the Defendant's two prior revocations of her probation sentences. The State argues that on these bases, the trial court properly enhanced the Defendant's sentence. We agree with the State.

"[S]entences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.* at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707. The defendant bears "[t]he burden of demonstrating that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

The trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made on the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2014); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

We conclude that the trial court properly sentenced the Defendant. The trial court considered the relevant principles and sentenced the Defendant to a within range

6

sentence. The evidence presented at trial and during the sentencing hearing supports the trial court's application of enhancement factors (1) and (8), based on the evidence presented that the Defendant had an extensive criminal history, including three felonies, and two failed opportunities to comply with a probation sentence. The Defendant's record is sufficient to support the application of these enhancement factors and the trial court did not abuse its discretion in so doing. As such, the Defendant is not entitled to relief on this issue.

## B. Alternative Sentencing

The Defendant contends that the trial court abused its discretion when it ordered the Defendant to serve her sentence in confinement. She argues that the trial court again relied on an "inaccurate assessment" of the Defendant's performance on probation, which was based on "misinterpreted" facts. She contends that release into the community with drug and mental health treatment was the appropriate form of service. The State responds that the trial court did not abuse its discretion because it clearly considered a sentencing alternative but concluded that it could not ignore the Defendant's history of drug-related convictions and multiple failed opportunities to serve an alternative sentence, which supported its denial of the Defendant's request. We agree with the State.

As previously stated, "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). We also reiterate that the defendant bears "the burden of showing that the sentence is improper." *Ashby*, 823 S.W.2d at 169. A trial court's decision regarding probation will only be invalidated if the court "wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014). Under an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Id*. at 475.

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

7

Every sentencing decision necessarily requires a case-by-case analysis considering "the nature of the offense and the totality of the circumstances . . . including a defendant's background." *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (quoting *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986)). In determining if incarceration is appropriate in a given case, a trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1). A defendant who is sentenced as an especially mitigated or standard offender and who has committed a Class C, D, or E felony should be "considered as a favorable candidate for alternative sentencing options," if certain conditions are met. T.C.A. § 40-35-102(6)(A). The guidelines regarding favorable candidates are advisory. T.C.A. § 40-35-102(6)(D). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103.

Initially, we note that the Defendant is not a favorable candidate for alternative sentencing pursuant to Tennessee Code Annotated section 40-35-102(6)(A). Furthermore, after much thoughtful consideration, the trial court denied the Defendant's request for alternative sentencing based on her prior history of criminal convictions and failure to comply with probationary terms. The trial court considered that the Defendant had been given multiple opportunities to address her drug problems outside of incarceration and had failed to do so. The trial court also expressed concern about the children in the Defendant's life to whom she was exposing her drug use and involvement in illicit drug sales. The trial court considered these multiple factors, which it deemed weighed against the Defendant's request.

The evidence presented at the sentencing hearing established that the Defendant had three prior drug felonies and numerous misdemeanors including simple drug possession. The evidence was that when committing the present drug-related offense, the Defendant brought along a minor child. Finally, the evidence was that the Defendant had been granted alternative sentences that had subsequently been revoked in two prior cases.

8

Based on this evidence, we conclude that the Defendant has not established that the trial court abused its discretion by denying her an alternative sentence. The Defendant is not entitled to relief on this issue.

## C. *Bise* and *Caudle*

Lastly, the Defendant contends that two opinions authored by our supreme court, *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012) and *State v. Caudle*, 388 S.W.3d 273 (Tenn. 2012) should be overturned because they "effectively eliminate any meaningful appellate review of a trial court's sentencing decision." The Defendant specifically refers to a dissent written in *State v. Biggs*, 482 S.W.3d 923 (Tenn. Crim. App. 2015). The State responds that the Defendant's reliance on the dissent in *Biggs* to argue against the sentencing frameworks laid out in *Bise* and *Caudle* is misplaced.

We acknowledge the Defendant's argument but would point out that this court lacks the judicial power to overturn a previous ruling of our supreme court, as it is the "supreme judicial tribunal of the state" and we are subject to its adjudications. *Barger v. Brock*, 535 S.W.2d 337, 340 (Tenn. 1976). Thus the Defendant is not entitled to relief.

## III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE